**ABEX CORPORATION,**
Plaintiff-Appellee,

v.

**SKI'S ENTERPRISES, INC., et al. Defendants,**

**and**

**UNITED STATES of America,**
Defendant-Appellant,

v.

**Walton SHIM and Sandra Shim,**
Defendants-Appellees.

No. 84–1787.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 1984.

Decided Nov. 27, 1984.

David Waters, Goodsill, Anderson, Quinn & Stifel, Honolulu, Hawaii, for Abex.

Larry C.Y. Lee, Honolulu, Hawaii, for Shim.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Chief, App. Sec., William S. Estabrook, III, Atty., Farley P. Katz, Atty., Washington, D.C., for defendant-appellant.

Before HUG, TANG and SCHROEDER, Circuit Judges.

TANG, Circuit Judge:

The government appeals the award of attorney fees to private parties in an interpleader action. The issue presented is whether the Equal Access to Justice Act, 28 U.S.C. § 2412, authorizes an award of attorney fees to an interpleader party out of the interpleader fund before satisfaction of preexisting federal tax liens. We reverse.

## I.

Abex Corporation contracted with the State of Hawaii for construction of loading bridges at the Honolulu Airport. Abex hired Ski's Enterprises to do related installation work in August 1978. After partial completion of the work, Abex owed Ski's approximately $14,000.

The government and other creditors of Ski's claimed the amount in various portions. The total of all claims exceeded the amount owed to Ski's which prompted Abex to file an interpleader action seeking discharge of the debt and attorney fees.

The government answered, claiming Ski's owed about $18,000 in taxes from the first quarter of 1978 and that the government's tax lien priority entitled it to the whole fund. The parties stipulated that the government's liens were superior. A stipulation was entered to keep the fund open.

In February, 1980, the parties entered an agreement under which Ski's assigned its contracts to C & S Crane and Rigging Co. for $120,000. $25,000 of that amount went directly to Ski's creditors under a specified distribution plan: $15,000 (60%) to the IRS; $6,000 (24%) to Walton and Sandra Shim; $3000 (12%) to Hydraulic Services Inc.; and $500 (2%) each to Westinghouse Electric Company and Atlas Electric Company. This stipulated distribution scheme, which was applicable to deposits made to compensate for work done after February 1980, was filed with the court on May 2, 1980.

At the beginning of August, 1981, Abex deposited another $13,000 with the court to extinguish completely its obligation to Ski's. The other parties, thinking the money was for work done after February, 1980, tried to distribute the amount pursuant to the distribution plan of the agreement. Abex would not agree to this stipulated distribution scheme because it claimed that the money was owed to Ski's prior to Ski's assignment to C & S Crane and Rigging. Abex claimed that the amount discharged all obligations owed to Ski's and sought attorney fees.

Although the new deposit paid off the remainder of what Ski's owed on its first quarter 1978 taxes, the government claimed that nearly $40,000 was owing when the rest of 1978 and 1979 tax liabilities were included. The government argued that attorney fees could not be paid to Abex until tax liens were satisfied.

In April, 1982, the district court found that the later deposit was intended to pay Ski's for work done prior to the February, 1980 assignment. But the court rejected the government's claim that it had priority to the complete fund until all liens were satisfied. The court cited the Equal Access to Justice Act, 28 U.S.C. § 2412, as authority to award attorney fees to a disinterested stakeholder before all liens were satisfied.

On January 14, 1983, the district court entered an order awarding $3381 in fees to Abex. The government then moved for summary judgment, claiming the rest of the fund. It claimed that $66,000 was owing in taxes, interest and penalties and that $23,000 of that amount was an assessment from November, 1978, which predated a claim filed by another creditor, Walton and Sandra Shim, which was filed December 1, 1978. Thus, the government claimed entitlement to the full amount of the new deposit. The Shims also filed for summary judgment, arguing that the government's statutory lien priority was superseded by the August 1981 stipulation to distribute the fund under the 1980 distribution scheme. Hearings on these motions were held March 17, 1983.

The district court ruled that the August 1981 distribution stipulation was invalid because the fund was intended to pay Ski's for work done before the February 1980 agreement. Thus, the government had statutory priority to the fund. However, the court ordered an award of fees to those parties who had incurred attorney fees under the futile belief that they would be eligible for a larger part of the fund pursuant to the 1980 agreement if Abex's attorney fees claim was defeated. The court found that the government's failure promptly to inform other parties that it intended to claim the whole fund justified the award of fees out of the interpleader fund to those parties.

On December 23, 1983, Abex moved the court to allow the withdrawal of fees from the fund by amending its order of January 14, 1983 *nunc pro tunc.* The Shims were awarded $1830 in attorney fees from the fund on January 4, 1984, and Abex's motion to withdraw fees was granted on January 25, 1984. Abex withdrew $3381. The government's motion for summary judgment was entered on February 27, 1984, entitling the government to the rest of the fund pursuant to its tax lien priority.

The government filed its notice of appeal March 23, 1984.

## II.

Abex Corporation and the Shims contend initially that the government's appeal is untimely. Because the district court entered orders granting them attorney fees on January 14, 1983, and January 4, 1984 respectively, they argue that the government's notice of appeal, which was filed March 23, 1984, was beyond the 60-day time period provided in Fed.R.App.P. 4.

■ Under Fed.R.Civ.P. 54(b), orders which resolve the claims of fewer than all of the parties to the action are not appealable absent "an express determination that there is no just reason for delay and ... an express direction for the entry of judgment." Thus, a particular claim in an interpleader action is not appealable until all claims to the fund are adjudicated. *Diamond Shamrock Oil and Gas Corp. v. Commissioner of Revenues, State of Arkansas,* 422 F.2d 532, 534 (8th Cir.1970). "Also interlocutory, and not appealable in the absence of a certificate, is an order *granting* interpleader, even though the stakeholder is disinterested; the rival claims of the interpleaded parties call the provisions of Rule 54(b) into play." 3A Moore, Federal Practice, ¶ 22.14[6] (2d ed. 1981).

■ The government's appeal is timely. The orders awarding fees did not provide for the withdrawal of money from the interpleader fund. No certificate expressly entering judgment and finding no just reason for delay was issued with respect to the individual attorney fee awards. Thus, the correct date for the commencement of the filing period was February 27, 1984, the date on which judgment was entered. The March 23, 1984 notice of appeal was timely.

Abex Corporation next contends that the government's argument against an award of fees to an interpleader plaintiff may not be considered by this court on appeal because the government failed to make the argument in the district court. Specifically, Abex claims that the government limited its argument in the district court to an assertion of priority over *other defendants*

in the interpleader action. According to Abex, the government did not argue that sections 6321 and 6322 of the Internal Revenue Code gave the government priority over an interpleader *plaintiff's* claim for attorney fees.

■ Generally, this court should not consider arguments that the appellant failed to raise below. *Rothman v. Hospital Service of Southern California,* 510 F.2d 956, 960 (9th Cir.1975). Application of the rule is discretionary. *Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). This court may dispense with the waiver rule when "the question is a purely legal one that is both central to the case and important to the public." *In Re Sells,* 719 F.2d 985, 990 (9th Cir.1983). "It is well settled in this circuit that where the new issue is purely a legal one, the injection of which would not have caused the parties to develop new or different facts, we may resolve it on appeal." *United States v. Dann,* 706 F.2d 919, 925 n. 5 (9th Cir.1983), *cert. granted,* — U.S. ——, 104 S.Ct. 2693, 81 L.Ed.2d 362 (1984).

■ Here, the question is strictly a legal proposition—whether the Equal Access to Justice Act abrogates the priority of outstanding tax liens to allow an award of fees to an interpleader plaintiff. Abex Corporation makes no claim that it would have developed its case or its facts differently had the government made its argument below.

### III.

The government maintains that the district court incorrectly awarded fees to Abex Corporation prior to full satisfaction of outstanding tax liens against Ski's Enterprises. The government argues, contrary to the district court's finding at the April 6, 1982 hearing, that federal tax lien statutes prohibit the award of fees in this case despite the recent passage of the Equal Access to Justice Act, 28 U.S.C. § 2412 (1982) (EAJA) which allows fees against the United States under certain circumstances.[1]

■ Generally, courts have discretion to award attorney fees to a disinterested stakeholder in an interpleader action. *Gelfgren v. Republic National Life Ins. Co.,* 680 F.2d 79, 81 (9th Cir.1982). Courts have clearly held, however, that the existence of prior federal tax liens gives the government a statutory priority over the interpleader plaintiff's ability to diminish the fund by an award of fees. *Bank of America National Trust & Savings Assn. v. Mamakos,* 509 F.2d 1217, 1219–20 (9th Cir.1975); *Campagna-Turano Bakery, Inc. v. United States,* 632 F.2d 39, 41 (7th Cir.1980); *Spinks v. Jones,* 499 F.2d 339, 340 (5th Cir.1974); see also *United States v. R.F. Ball Construction Co.,* 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510 (1958). Under sections 6321 and 6322 of the Internal Revenue Code, failure to pay taxes creates a lien on the taxpayer's real and personal property in favor of the government and the lien remains in force until the amount assessed "is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322.[2] According to the

1. 28 U.S.C. § 2412(b) provides:

Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, ... to the prevailing party in any civil action brought by or against the United States or any agency and any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

2. 26 U.S.C. § 6321 provides:

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6322 provides:

Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and

government, these statutes protect the interpleader fund from attorney fee reductions prior to satisfaction of the lien.

Abex contends that the EAJA abrogates the government's tax lien priority to allow an award of fees to the interpleader plaintiff. Under the EAJA, 28 U.S.C. § 2412, the United States is liable to a prevailing party for reasonable attorney fees in civil actions to the same extent any other party would be liable for fees under the common law or under a statute authorizing fees unless such liability is expressly prohibited by statute. Abex argues that the tax lien statutes do not "expressly prohibit" an award of attorney fees. Thus, according to Abex, Section 2412(b) allows the award of fees consistent with the general rule which allows an interpleader plaintiff to collect fees.

The Eighth and Tenth Circuits have already faced this issue. Both have held that the governmental priority established under the tax lien statutes precludes an award of fees to the plaintiff stakeholder from an interpleader fund when such an award would deplete the fund prior to total satisfaction of the lien. In *Millers Mutual Insurance Assn. of Illinois v. Wassall*, 738 F.2d 302 (8th Cir.1984), the plaintiff stakeholder received $1500 in attorney fees over the government's claim that no such award could be made if it reduced the amount recovered under prior tax liens. The Eighth Circuit reversed the award, concluding that the EAJA did not abrogate the statutory tax lien priority. "There is nothing in the statute or the legislative history of the EAJA to indicate that Congress intended to override the priority of the United States to interpleaded funds under prior federal tax liens." 738 F.2d at 304. In *Chevron U.S.A. v. May Oilfield Services, Inc.*, 739 F.2d 498 (10th Cir.1984), the Tenth Circuit reversed an award of attorney fees to an interpleader plaintiff, concluding that sections 6321 and 6322 of the Internal Revenue Code expressly prohibit-

ed an award of attorney fees under the EAJA. 739 F.2d at 499.

We find the reasoning of the Eighth and Tenth Circuits persuasive. The tax lien statutes establish a clear priority to interpleader funds in favor of the government. The passage of the EAJA, while abrogating governmental sovereign immunity against claims for attorney fees, does not dispense with the tax lien priority created under the tax lien statutes. *Millers Mutual*, 738 F.2d at 304.

Similarly, we reverse the award of fees to the Shims. The district court's award of fees to the Shims was improper as a matter of law because it drained the interpleader fund before tax liens were satisfied. The award of fees from the fund effectively gave the Shims a priority over the government with respect to the interpleader fund. This violated the statutory tax lien priority. *Millers Mutual*, 738 F.2d at 304; *Chevron U.S.A.*, 739 F.2d at 499.

Moreover, the EAJA authorizes an award of fees to a "prevailing party." The Shims, however, cannot fairly be characterized as prevailing parties in this action because the lower court found that the government's tax liens predated the Shim's substantive claim to the fund.

### IV.

The government's appeal is timely and presents a strictly legal issue which may be raised on appeal even if it was not raised below. The awards of attorney fees are reversed pursuant to the tax lien statutes which are not abrogated under the Equal Access to Justice Act.

REVERSED.

shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satis-

fied or becomes unenforceable by reason of lapse of time.