**Jose Rolando ESCOBAR RUIZ, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 83–7502.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted En Banc Sept. 14, 1987.

Decided Jan. 11, 1988.

As Amended Feb. 24, 1988.

Marc Van Der Hout, San Francisco, Cal., for petitioner.

William Kanter, Washington, D.C., for respondent.

Lory D. Rosenberg and Harvey Kaplan, American Immigration Lawyers Association and National Immigration Project of the National Lawyers Guild, Boston, Massachusetts, for the amici.

Before BROWNING, Chief Judge, GOODWIN, ANDERSON, NELSON, CANBY, REINHARDT, BEEZER, HALL, BRUNETTI, NOONAN and THOMPSON, Circuit Judges.

REINHARDT, Circuit Judge:

This case raises a critical question which we are apparently the first court to address: whether the Equal Access to Justice Act (EAJA) provides for awards of attorneys fees in deportation proceedings. This is our third opinion in this case; as we have twice before, we hold that the EAJA covers deportation proceedings before the administrative agency as well as court proceedings reviewing agency deportation decisions.

## I. BACKGROUND

Escobar Ruiz is a citizen of El Salvador who allegedly entered this country without inspection in 1983. The immigration judge (IJ) found him deportable and he appealed to the Board of Immigration Appeals (BIA) and filed a motion to reopen. The BIA affirmed the IJ and denied the motion. Escobar Ruiz then filed a petition for review in this court. At the time the oral argument was conducted, we expressed strong concern regarding the INS's conduct throughout the proceedings below; it appeared that the INS had not given Escobar Ruiz proper notice of the various hearings and had failed to advise him of his rights, in violation of its own regulations. Shortly after the oral argument, the INS filed a motion before the BIA to reopen Escobar Ruiz's deportation proceedings. The BIA granted the motion, despite the fact that it had previously denied Escobar Ruiz's petition to reopen. We subsequently dismissed Escobar Ruiz's petition for review as moot. Escobar Ruiz then moved for attorneys fees and costs for the work his counsel performed both in the deportation proceedings before the BIA and on the petition for review before this court. His request for fees was made under the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504 and 28 U.S.C. § 2412 (1982 & Supp. III 1985).

In our first opinion, *Escobar Ruiz v. INS*, 787 F.2d 1294 (9th Cir.1986) (*"Escobar Ruiz I"*), we held that the EAJA applies to immigration proceedings before the IJ and the BIA. We rejected the government's argument that section 292 of the Immigration and Nationality Act (INA), 8 U.S.C. § 1362 (1982), precludes application of the EAJA to deportation proceedings. Section 292 provides that individuals have the privilege of being represented in deportation proceedings "at no expense to the Government." We concluded that that section only serves to relieve the government of the obligation to pay for the representation of indigent aliens in deportation proceedings. It does not, we held, bar the application of the subsequently-enacted fee-shift-

ing provisions of the EAJA. *Escobar Ruiz I*, 787 F.2d at 1296–97.

The government then petitioned for rehearing and claimed, for the first time, that deportation proceedings are not covered by the EAJA because they are not "adversary adjudications" within the meaning of the statute. *See* 5 U.S.C. § 504 (1982 & Supp. III 1985). We agreed to consider the question, despite the fact that the government had not raised it in its brief on appeal, because of the importance of the issue and the circumstances of the government's failure to raise it initially. In our second opinion, *Escobar Ruiz v. INS*, 813 F.2d 283 (9th Cir.1987) (*"Escobar Ruiz II"*), we concluded that deportation proceedings meet the EAJA's requirements for adversary adjudications. As a result, we denied the government's petition for rehearing. *Escobar Ruiz II*, 813 F.2d at 286–93. We subsequently granted rehearing en banc in order to determine whether the EAJA applies to deportation proceedings. We now affirm our earlier decisions.

## II. ADVERSARY ADJUDICATIONS

The EAJA provides that:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (1982 & Supp. III 1985).[1] In addition, the court is directed to include in the award, to the extent authorized by section 504, attorneys fees for adversary adjudications conducted by administrative agencies. *Id.* § 2412(d)(3).

Turning to section 504, that portion of the EAJA directs agencies that conduct adversary adjudications to award fees un-

---

1. The original EAJA expired on October 1, 1984. Congress reauthorized the statute in 1985 and made its reenactment retroactive to the previous expiration date. While the statute was modified somewhat on reenactment, the two versions are identical in all aspects relevant to this case.

der the same standard applicable to civil actions. 5 U.S.C. § 504(a)(1) (1982 & Supp. III 1985). "Adversary adjudication" means "an adjudication under section 554 of this title in which the position of the United States is represented by counsel or otherwise." *Id.* § 504(b)(1)(C). The government contends that because deportation proceedings are not directly governed by section 554 of the Administrative Procedure Act (APA), 5 U.S.C. § 554 (1982), they do not meet the definition of adversary adjudication.[2] We disagree.

▆▆▆▆ The dispute centers around the meaning of the phrase "an adjudication under section 554." The government asserts that "under" is the same thing as "conducted under" or "governed by." The petitioner contends that "under" means "as defined by" or "under the meaning of." Both interpretations are plausible; because the statutory language is unclear, we are justified in looking to the legislative history and purpose of the EAJA in order to ascertain the correct reading. *See Blum v. Stenson,* 465 U.S. 886, 896, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984); *Catawba Indian Tribe of South Carolina v. South Carolina,* 718 F.2d 1291, 1296 (4th Cir.1983), *rev'd and remanded,* 476 U.S. 498, 106 S.Ct. 2039, 90 L.Ed.2d 490 (1986). Moreover, even were we to agree with the government that the words of the statute are plain and unambiguous on their face, we may still look to the legislative history if the plain meaning of the words is at variance with the policy of the statute as a whole, *see Church of Scientology of California v. United States Department of Justice,* 612 F.2d 417, 421–22 (9th Cir.1979) (citing *United States v. American Trucking Association,* 310 U.S. 534, 543–44, 60

S.Ct. 1059, 1063–64, 84 L.Ed. 1345 (1940)), or to see if there is "clearly expressed legislative intention" contrary to the language, *see INS v. Cardoza Fonseca,* —— U.S. ——, 107 S.Ct. 1207, 1213 n. 12, 94 L.Ed.2d 434 (1987). Use of the legislative history is particularly appropriate where we are construing a statute in a case of first impression, as we are here. *See United States v. Dadanian,* 818 F.2d 1443, 1448 (9th Cir.1987). The legislative history and purpose of the EAJA support the petitioner's interpretation of "adversary adjudication."

### A. *The "Defined Under" Standard*

▆▆▆▆ The conference committee on the original EAJA clearly agreed with the position advanced here by the petitioner: in its joint explanatory statement, the committee declared that the statute "defines adversary adjudication as an agency adjudication *defined under* the Administrative Procedures Act where the agency takes a position through representation by counsel or otherwise." H.R.Conf.Rep. No. 1434, 96th Cong., 2d Sess. 23 (1980), *reprinted in* 1980 U.S.Code Cong. & Admin.News 5003, 5012 (emphasis added). The APA defines "adjudication" for its purposes as an adjudication "required by statute to be determined on the record after opportunity for an agency hearing," with certain exemptions that do not apply here. 5 U.S.C. § 554(a) (1982).[3] Under this standard, then, we look at the procedures by which deportation hearings are actually conducted, rather than determining whether such hearings are technically governed by the APA.

---

2. The government does not contend that the position of the United States is not represented in deportation proceedings. Thus the other part of the section 504 definition is met. *See Escobar Ruiz II,* 813 F.2d at 286–87.

3. The cases that are specifically excluded from section 554 are:
   (1) a matter subject to a subsequent trial of the law and the facts de novo in a court;
   (2) the selection or tenure of an employee, except a [sic] administrative law judge appointed under section 3105 of this title;

   (3) proceedings in which decisions rest solely on inspections, tests, or elections;
   (4) the conduct of military or foreign affairs functions;
   (5) cases in which an agency is acting as an agent for a court; or
   (6) the certification of worker representatives.
5 U.S.C. § 554(a) (1982).

Other circuits have followed the "defined under" interpretation of section 504. The Eighth Circuit, for example, observed that "the EAJA covers only an 'adversary adjudication'" and then went on to declare: "An 'adversary adjudication' is defined as one which is 'determined on the record after an opportunity for an agency hearing,' 5 U.S.C. § 554, where 'the position of the United States is represented by counsel.' 5 U.S.C. § 504(b)(1)(C)." *Cornella v. Schweiker,* 728 F.2d 978, 988 (8th Cir. 1984).[4] Similarly, the Seventh Circuit used the APA's definition of adjudication in deciding a claim for attorneys fees for labor certification proceedings before the Department of Labor. *Smedberg Machine & Tool, Inc. v. Donovan,* 730 F.2d 1089, 1092 (7th Cir.1984);[5] *see also Bonanza Trucking Corp. v. United States,* 664 F.Supp. 1453, 1461 (Ct.Int'l Trade 1987) (customs hearing "was an adjudication within the meaning of section 554" and was therefore covered by the EAJA).

The "defined under" interpretation is also supported by the model rules for agency implementation of the EAJA issued by the Administrative Conference of the United States (ACUS). 46 Fed.Reg. 32900 (1981).[6] The commentary to the model rules notes: "Exactly what proceedings are encompassed by [the language of the EAJA] has long been a difficult legal question, and we proposed a broad interpretation of the reference to adjudications 'under section 554' largely to avoid protracted debate about whether particular proceedings fall within its ambit." 46 Fed.Reg. at 32901. The commentary observes that "considering the purposes of the [EAJA], questions of its coverage should turn on substance—the fact that a party has endured the burden and expense of a formal hearing—rather than technicalities." *Id.*[7] The "defined under" standard, which looks to substance rather than to technicality, is clearly more consistent with the ACUS's interpretation.

In short, we agree with the petitioner that "an adjudication under section 554" means "an adjudication as defined by section 554." This interpretation is supported by the legislative history of the EAJA, by the way other circuits have analyzed EAJA issues, and by the model rules for EAJA implementation. There is no question that deportation proceedings meet that definition. Deportation proceedings are mandated by the immigration statute, which provides that a "[d]etermination of deportability in any case shall be made only upon a record made in a proceeding before a special inquiry officer, at which the alien shall have reasonable opportunity to be present." 8 U.S.C. § 1252(b) (1982). Thus, deportation proceedings clearly meet the APA's definition of an adjudication "required by statute to be determined on the record after opportunity for an agency hearing." 5 U.S.C. § 554(a) (1982).

---

**4.** In *Cornella,* the court held that the administrative proceedings regarding the claimant's social security disability benefits did not constitute an adversary adjudication because the position of the United States had not been represented by counsel at the agency level. 728 F.2d at 988. Social security administrative proceedings in which the position of the United States *is* represented by counsel do constitute adversary adjudications under the EAJA. This supports the view that deportation proceedings also qualify for EAJA fee awards. *See* section C *infra.*

**5.** In *Smedberg,* the court concluded that the proceedings were not covered by the EAJA because they were not statutorily mandated, as required by the APA definition. 730 F.2d at 1092–93. Under the government's reading, of course, the court would only have had to observe that the proceedings were not "governed by" the APA.

**6.** The EAJA directed agencies to establish uniform procedures for the award of fees in their administrative proceedings after consulting with the chair of the ACUS. 5 U.S.C. § 504(c)(1) (1982). The ACUS issued model rules in order to facilitate the consultation process. *See* 46 Fed.Reg. at 32900.

**7.** The final model rules reversed the ACUS's earlier position that proceedings in which agencies *voluntarily* use the procedures of section 554 are covered by the EAJA. The ACUS concluded that that interpretation conflicted with congressional intent. It did not, however, retreat from its view that the section 554 reference should be interpreted broadly. *See* 46 Fed. Reg. at 32901.

As the government points out, the Supreme Court held in *Marcello v. Bonds,* 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107 (1955), that deportation proceedings are directly governed by the INA rather than the APA. The government argues that *Marcello,* by exempting deportation proceedings from APA coverage, removes them from the scope of the EAJA. However, *Marcello*'s treatment of the relationship between the INA and the APA is somewhat ambiguous. The Court examined both statutes and concluded that when Congress drafted the hearing provisions of the INA it used the APA as a model, drawing on the APA provisions and "adapting them to the particular needs of the deportation process." 349 U.S. at 308–09, 75 S.Ct. at 760–61. But *Marcello* did not hold that deportation proceedings are excluded or exempted from section 554. In fact, immigration proceedings are covered by the APA. *See Shaughnessy v. Pedreiro,* 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868 (1955) (deportation orders reviewable under APA); *Wong Wing Hang v. INS,* 360 F.2d 715, 717 (2d Cir.1966) (INA "implements and applies" APA). *Marcello,* while it used the word "exemption," held only that the INA "supersedes" the hearing provisions of the APA—that is, that when the two statutes diverge, the more specialized hearing provisions of the INA govern. *See* 349 U.S. at 309–10, 75 S.Ct. at 761–62.[8]

Moreover, the discrepancy between the INA and the APA that the *Marcello* Court found critical has since been eradicated. The Court found a significant difference only in the statutes' treatment of the functions of the hearing officer: the INA al-lowed one individual to act as both hearing officer and prosecutor, while the APA expressly provided that hearing officers should not be responsible to or under the supervision of those involved in investigation and prosecution. *See id.,* 349 U.S. at 305–06, 75 S.Ct. at 759–60. However, amendments to the immigration regulations have virtually eliminated the distinctions between the two statutes' definitions of the hearing officer's role. *See Escobar Ruiz II,* 813 F.2d at 292 n. 9. The hearing provisions of the INA and the APA are now fundamentally identical. There is therefore no question that the deportation process conforms to the APA's requirements and constitutes an adversary adjudication as defined under the APA.

### B. *The Purpose of the EAJA*

This reading of the EAJA's scope is far more consistent with the statute's objectives than is the hypertechnical, highly restrictive interpretation proposed by the government. The EAJA

rests on the premise that a party who chooses to litigate an issue against the Government is not only representing his or her own vested interest but is also refining and formulating public policy. An adjudication or civil action provides a concrete, adversarial test of Government regulation and thereby insures the legitimacy and fairness of the law.

H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10 (1980), *reprinted in* 1980 U.S.Code Cong. & Admin.News 4984, 4988–89. The statute gives individuals the opportunity to recover their fees and costs in order to ensure that they "will not be deterred from seeking

---

**8.** In contrast to the Supreme Court's approach to deportation proceedings in *Marcello,* other courts have held that other types of proceedings are specifically excluded from section 554. For example, in *Fidelity Construction Co. v. United States,* 700 F.2d 1379 (Fed.Cir.), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983), the Federal Circuit held that proceedings before agency boards of contract appeals were not covered by the EAJA because Congress had stated explicitly that they were "not subject to the adjudicative procedure of 5 U.S.C. § 554." 700 F.2d at 1386. Congress later acted to bring such proceedings within the EAJA's scope. Act of Aug. 5, 1985, Pub.L. No. 99-80, § 1(c)(2), 99 Stat. 183, 184. Similarly, the Federal Circuit has held that proceedings before the Merit Systems Protection Board (MSPB) are not covered by the EAJA because adjudications involving employee tenure are excluded from the section 554 definition. *See Olsen v. Department of Commerce, Census Bureau,* 735 F.2d 558, 562 (Fed.Cir.1984). *But see Miller v. United States,* 753 F.2d 270, 275 (3d Cir.1985) (awarding fees for MSPB proceedings because such proceedings meet the EAJA's definition of "adversary adjudication"). None of section 554's exemptions applies to deportation proceedings. *See* note 3 *supra.*

review of, or defending against, unjustified governmental action because of the expense involved in securing the vindication of their rights." H.R.Rep. No. 120, 99th Cong., 1st Sess., pt. 1, at 4 (1985), *reprinted in* 1985 U.S.Code Cong. & Admin.News 132, 132–33. The statute's primary purpose is "to increase the accessibility to justice—in administrative proceedings and civil actions." *Id.* at 8, 1985 U.S.Code Cong. & Admin.News at 136. At the same time, Congress limited fee awards to adversary adjudications in order to guarantee that the party seeking fees would have "a concrete interest at stake." H.R.Rep. No. 1418, *supra*, at 14, 1980 U.S.Code Cong. & Admin.News at 4993.

The congressional policies underlying the EAJA are consistent with allowing fee awards in proceedings that qualify as adversary adjudications under the APA's definition. Adjudications determined on the record after an agency hearing where the government is represented tend to be expensive and time-consuming proceedings, and are especially likely to discourage legitimate claimants from vindicating their rights. In particular, deportation proceedings are difficult for aliens to fully comprehend, let alone conduct, and individuals subject to such proceedings frequently require the assistance of counsel. Certainly such individuals have "concrete interests" at stake, yet the expense involved may often deter them from asserting their rights against unreasonable governmental action. At the same time, because the position of the United States is represented, applying the EAJA to deportation proceedings meets the requirement of "basic fairness that the United States not be liable in an administrative proceeding in which its interests are not represented." *Id.* at 12, 1980 U.S.Code Cong. & Admin.News at 4991. Awarding attorneys fees in deportation proceedings would unquestionably advance the purposes underlying the EAJA. Indeed, "such proceedings seem to fit precisely within the language and purpose of EAJA." 1 C. Gordon & H. Rosenfield, *Immigration Law and Procedure* § 1.24Ab(2) at 1–152.12 (rev. ed. 1987).

On the other hand, to refuse to apply the EAJA because deportation proceedings are not conducted directly under the APA would be less consonant with congressional intent. Such proceedings are no more or less burdensome on legitimate claimants than adjudications governed by section 554, and the deterrent effect of their expense is no more or less harmful. Important public policies would suffer if individuals were discouraged from challenging unreasonable governmental conduct through deportation hearings. Thus, to preclude awards of attorneys fees in such proceedings would contradict the policies and purposes of the EAJA.

### C. *The EAJA's Applicability to Social Security Proceedings*

The history of the EAJA's treatment of social security administrative hearings also supports coverage of deportation proceedings. The Supreme Court has refused to decide whether the APA applies to social security disability claims, observing that in any case, "the social security administrative procedure does not vary from that prescribed by the APA." *Richardson v. Perales*, 402 U.S. 389, 409, 91 S.Ct. 1420, 1431, 28 L.Ed.2d 842 (1971). Thus, while social security administrative proceedings unquestionably meet the "defined under" standard, whether they also meet the "governed by" standard is unclear.

This ambiguity has not, however, affected the EAJA's applicability to social security hearings. In the original legislative history, the conference committee noted that the definition of adversary adjudication "precludes an award in a situation where an agency, *e.g., the Social Security Administration,* does not take a position in the adjudication." H.R.Conf.Rep. No. 1434, *supra,* at 23, 1980 U.S.Code Cong. & Admin.News at 5012 (emphasis added). The committee then continued: "If, however, the agency does take a position at some point in the adjudication, the adjudication would then become adversarial." *Id.* When the EAJA was reenacted in 1985, Congress confirmed that social security administrative hearings "in which the Secretary is represented are covered by the

[EAJA]." H.R.Rep. No. 120, *supra*, pt. 1, at 10, 1985 U.S.Code Cong. & Admin.News at 138–39.[9]

It is clear from this history that Congress did not consider the uncertainty as to the APA's applicability to social security hearings relevant to the question of the EAJA's applicability. It simply does not matter whether administrative proceedings are governed by the APA or by a more specialized version of the APA such as the Social Security Act (or the INA). Rather, Congress was concerned only with the fact that social security hearings are of the type defined under section 554. Congress declared that social security administrative proceedings in which the position of the United States is represented fall under the EAJA. They do so irrespective of whether they are governed directly by section 554. By the same token, the EAJA covers deportation proceedings in which the position of the United States is represented, regardless of whether such proceedings are conducted directly under section 554.

The EAJA already covers more than just cases governed directly by section 554, as the treatment of social security indicates. The government cites no examples of proceedings other than social security and deportation that meet the section 554 definition, yet are not conducted under section 554. Rather than treating social security and deportation proceedings alike, the government seeks to apply a hypertechnical interpretation of the EAJA in the case

of deportation while acknowledging that a broad interpretation governs social security.[10] We can find no justification in the EAJA or its legislative history for making such a distinction.

## III. PRECLUSION BY THE IMMIGRATION AND NATIONALITY ACT

■ The government points out that section 2412(d)(1)(A) of the EAJA begins: "Except as otherwise specifically provided by statute...." It argues that section 292 of the INA satisfies this condition. Section 292 states: "In any exclusion or deportation proceedings [before the IJ and the BIA], the person concerned shall have the privilege of being represented (*at no expense to the Government*) by such counsel, authorized to practice in such proceedings, as he shall choose." 8 U.S.C. § 1362 (1982) (emphasis added). The government argues that the parenthetical phrase precludes application of the EAJA to deportation proceedings.[11] We disagree.

The legislative history of the EAJA makes clear that the words "[e]xcept as otherwise specifically provided by statute" were not intended to refer to statutes such as section 292. The committee report states that the EAJA "applies to all civil actions except ... those already covered by *existing fee-shifting statutes*." H.R.Rep. No. 1418, *supra*, at 18, 1980 U.S.Code Cong. & Admin.News at 4997 (emphasis added). The EAJA "is intended to apply

---

**9.** The reauthorization also amended the original EAJA to clarify that the fee-shifting provisions of the Social Security Act did not preclude a fee award under the EAJA. *See* note 12 *infra; see also* H.R.Rep. No. 120, *supra*, pt. 1, at 20, 1985 U.S.Code Cong. & Admin.News at 148 ("*when* fee awards are made in Social Security or SSI cases under the EAJA, ...") (emphasis added).

**10.** Prior to reenactment of the EAJA, the Department of Health and Human Services took the position that social security claims adjudications were not covered by the EAJA even if the government was represented, because such adjudications were not "required to be under 5 U.S.C. 554." *See* 48 Fed.Reg. 45251, 45251 (1983). The department subsequently revised its regulations to conform to the clarifying statement in the legislative history of the 1985 reauthorization, quoted above. *See* 52 Fed.Reg.

23311, 23312 (1987). The Justice Department regulations excluding deportation proceedings from EAJA coverage, *see* 46 Fed.Reg. 48921, 48922 (1981), are just as misguided and just as inconsistent with congressional intent as the earlier HHS regulations. Moreover, the Justice Department believes that deportation hearings are "exempt from the requirements" of the APA. *Id.* As already noted, that belief is mistaken. *See* note 8 *supra.*

**11.** *The government apparently believes that section 292 precludes EAJA coverage of proceedings in the courts of appeal on petitions for review of final deportation orders, as well as deportation proceedings before the agency. The government has not raised this issue in the case before us; in any event, our holding regarding section 292 should dispose of this question.*

only to cases (other than tort cases) where fee awards against the government are not already authorized." *Id.* Fee awards are not already authorized in deportation proceedings, and section 292 is not a fee-shifting statute. Thus deportation proceedings are included in the class of cases to which Congress intended the EAJA to apply, and are not precluded from coverage by section 292.

The legislative history of section 292 supports this conclusion. The committee report discusses section 292 in the context of describing the rights aliens have in immigration proceedings. *See* H.R.Rep. No. 1365, 82d Cong., 2d Sess. 57 (1952), *reprinted in* 1952 U.S.Code Cong. & Admin. News 1653, 1712. Section 292 expresses Congress' intent to grant aliens the right to be represented by counsel in such proceedings, but not to grant indigent aliens the right to have counsel appointed at government expense. The EAJA, adopted almost thirty years later, was designed to accomplish a fundamental change with respect to the award of attorneys fees to parties who prevail against the government. It does not conflict with the congressional intent underlying section 292, because it does not grant indigents the right to government-paid counsel. Rather, the EAJA grants *all* litigants, including those involved in deportation proceedings, the right to attorneys fees if they prevail against the government after the government has taken an unreasonable position. The parenthetical phrase in section 292 was designed to deal with the relationship between indigency and the right to counsel, while the EAJA was designed to deal with the question of fee-shifting where that question is not addressed by existing statutes. The EAJA does not conflict with or repeal section 292, nor does section 292 limit the applicability of the EAJA. The two statutes simply address different issues.

To read the statutes as the government urges would conflict with the policies of the EAJA that we have already discussed. The INA was enacted in 1952; among other things, it granted aliens the right to have lawyers in deportation proceedings, while telling them that they would have to pay for their own representation. The EAJA was enacted in 1980 in order to increase accessibility to justice and thereby ensure the legitimacy and fairness of the law. The "except" clause was not designed to exclude aliens or any other group from the benefits of the EAJA's fee-shifting system; to read it in that manner would be inconsistent with the law's own stated purposes.

We faced a similar issue in *Wolverton v. Heckler*, 726 F.2d 580 (9th Cir.1984). Section 206(b) of the Social Security Act, 42 U.S.C. § 406(b) (1982), provides that a court may award attorneys fees in a civil action brought to recover past-due benefits under Title II of the statute. *See* 726 F.2d at 582. We held that an EAJA fee award was not precluded because section 206(b) was not a statute that "otherwise specifically provides" for attorneys fees: "The EAJA provides for shifting the burden of attorneys' fees from the private litigant to the government. The Social Security Act does not provide for fee shifting. It specifies only a limitation on the amount that a claimant must pay toward lawyers' fees." *Id.*[12] Similarly, the INA does not provide for fee shifting; it limits only the availability of appointed government-paid counsel for indigent aliens.

The cases that the government cites to support its position are distinguishable from this case in critical respects. *Tulalip Tribes of Washington v. FERC*, 749 F.2d 1367 (9th Cir.1984), *cert. denied*, 474 U.S. 900, 106 S.Ct. 270, 88 L.Ed.2d 225 (1985), concerned a provision in the Federal Power Act which declares: "No costs shall be assessed against the [Federal Power] Commission in any judicial proceeding ... under this chapter." 16 U.S.C. § 825p (1982). We held that this language precluded a fee

---

12. In the 1985 reauthorization, Congress amended the EAJA to provide explicitly that section 206(b) of the Social Security Act does not prevent a fee award under the EAJA. Act of Aug. 5, 1985, Pub.L. No. 99–80, § 3, 99 Stat. 183, 186.

The legislative history "clarifies that an EAJA award in Social Security cases is not precluded by the fee provision in the Social Security Act." H.R.Rep. No. 120, *supra*, pt. 1, at 7, 1985 U.S. Code Cong. & Admin.News at 135.

award under the EAJA. But this provision, unlike section 292, is clearly a prohibition against fee-shifting—precisely the type of statute to which the EAJA's legislative history refers. Thus the holding of *Tulalip Tribes* cannot control here.[13]

The government also relies on *Abex Corp. v. Ski's Enterprises, Inc.*, 748 F.2d 513 (9th Cir.1984), an interpleader action. There, we refused to award fees under the EAJA before preexisting federal tax liens were satisfied. We explained that the tax lien statutes "establish a clear priority to interpleader funds in favor of the government" and that the EAJA did not dispense with that priority. 748 F.2d at 517. In *Abex*, the two statutes at issue—the tax lien statutes and the EAJA—were in direct conflict, and we had to determine which took priority.[14] That is not the situation here. As already noted, the fee-shifting provisions of the EAJA are not inconsistent with section 292's ban against appointing counsel for indigents at government expense; nor does the ban prohibit awarding fees to aliens who challenge unreasonable governmental action. Thus section 292 does not preclude a fee award under the EAJA.

## IV. PREVAILING PARTY

We convened an en banc panel of this court in order to resolve the important question considered above and not to reconsider the original panel's determination whether, under the particular facts of this case, Escobar Ruiz was a prevailing party and thus entitled to attorneys fees. We did not ask the parties to address the prevailing party issue here, and they did not do so. In any event, we see no reason to disturb the original panel's ruling on that point. *See Escobar Ruiz I*, 787 F.2d at 1297–98. Because the original panel concluded that Escobar Ruiz was not a prevailing party as of the time of its decision, we deny without prejudice his motion for attorneys fees.[15]

---

**13.** The legislative history of the 1985 EAJA reauthorization states explicitly that Congress rejected the statutory interpretation of *Tulalip Tribes.* H.R.Rep. No. 120, *supra,* pt. 1, at 17, 1985 U.S. Code Cong. & Admin.News at 145. We express *no opinion as to the continued validity of Tulalip Tribes* in light of this language; we merely note that the case is not relevant for purposes of resolving the issues before us.

**14.** We did not, as the government asserts, hold that the tax lien statutes prohibited an award of fees under the EAJA. We held only that the fee award in that case was improper "because it drained the interpleader fund before tax liens were satisfied." 748 F.2d at 517.

**15.** We see no constitutional problem whatsoever with deciding this claim. The dispute between Escobar Ruiz and the INS over whether Escobar Ruiz is entitled to attorneys fees clearly presents a case or controversy within the meaning of Article III; not one of the cases in which requests for attorneys fees have been denied on prevailing party grounds has suggested that jurisdiction over the fee request was lacking. *See, e.g., Hanrahan v. Hampton,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (per curiam); *Proctor v. Consolidated Freightways Corp.,* 795 F.2d 1472 (9th Cir.1986); *McGill v. Secretary of Health and Human Serv.,* 712 F.2d 28 (2d Cir. 1983), *cert. denied,* 465 U.S. 1068, 104 S.Ct. 1420, 79 L.Ed.2d 745 (1984); *NLRB v. Doral Bldg. Serv.,* 680 F.2d 647 (9th Cir.1982).

The real problem, in the dissenters' view, is that we have decided the question whether the claim is covered by the statute before deciding whether the claimant can prevail under its terms. We believe the order we have followed is the logical and reasonable order in which to address the issues presented to us. Unless the statute applies, it matters not whether the claim would meet the conditions for recovery. That our order is a proper one is demonstrated in part by the fact that it is the order in which the issues were presented by the parties. More important, it is the order followed by the other courts that have ruled on fee requests when the EAJA's applicability was questioned. Other circuits have decided the question whether the statute applies to the type of proceeding involved *before* determining whether the claimant met the prevailing party test, regardless whether their answer to the prevailing party question was in the affirmative or the negative. *See, e.g., Brown v. Secretary of Health and Human Serv.,* 747 F.2d 878 (3rd Cir.1984) (holding EAJA applied to judicial review of social security decisions before deciding petitioner was not prevailing party); *Austin v. Department of Commerce,* 742 F.2d 1417 (Fed.Cir.1984) (holding EAJA applied to appeal of Merit Systems Protection Board decision before deciding petitioners were not prevailing parties); *United States v. 329.73 Acres of Land,* 678 F.2d 21 (5th Cir.1982) (holding EAJA did not apply to condemnation proceeding without addressing prevailing party issue), *vacated,* 704 F.2d 800 (5th Cir.1983) (en banc) (holding EAJA applied before deciding petitioner was prevailing party); *see also McGill v. Secretary of Health and Human Serv.,* 712

## V. CONCLUSION

Deportation proceedings are covered by the EAJA because they are required by statute to be determined on the record after opportunity for a hearing and therefore constitute adjudications under section 554 of the APA. Moreover, section 292 of the INA, which is not a fee-shifting statute, does not preclude applicability of the EAJA to deportation proceedings. For these reasons, we hold that the EAJA covers deportation proceedings before the agency as well as petitions for review of deportation orders by this court. However, because Escobar Ruiz is not presently a prevailing party within the meaning of the EAJA, he is not entitled to attorneys fees at this time. His motion for attorneys fees is therefore denied.

J. BLAINE ANDERSON, Circuit Judge, dissenting, in which dissent Judges BEEZER and BRUNETTI concur:

I dissent. This case fails to satisfy the threshold requirement imposed by U.S. Const. Article III, § 2 that those who seek to invoke the power of the federal courts must allege an actual case or controversy. *Jenkins v. McKeithen*, 395 U.S. 411, 421–25, 88 S.Ct. 1843, 1848–51, 23 L.Ed.2d 404 (1969); *Flast v. Cohen*, 392 U.S. 83, 94–101,

88 S.Ct. 1942, 1949–53, 20 L.Ed.2d 947 (1968). A case arises within the meaning of Article III, § 2, if it involves "[a] declaration on rights as they stand ... not on rights which may arise in the future ... an actual controversy over an issue, not a desire for an abstract declaration of the law." *In re Summers*, 325 U.S. 561, 567, 65 S.Ct. 1307, 1311, 89 L.Ed. 1795 (1945).[1] Plaintiffs in the federal courts "must allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction." *Linda R.S. v. Richard D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973). There must be a "personal stake in the outcome" such as to "assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).[2] This fundamental principle is no different where statutory issues are raised. *Cf. United States v. SCRAP*, 412 U.S. 669, 687, 93 S.Ct. 2405, 2415, 37 L.Ed.2d 254 (1973).

A consequence of Ruiz's prevailing on the issue that the majority confronts and decides will not advance his interests one iota. To put it more bluntly, he's damned if we do and damned if we don't. He has not demonstrated "injury in fact and a sub-

---

F.2d 28 (2d Cir.1983), *cert. denied*, 465 U.S. 1068, 104 S.Ct. 1420, 79 L.Ed.2d 745 (1984).

Moreover, we are not considering this case for the first time. The three-judge panel that originally ruled on Escobar Ruiz's fee request decided to resolve the issues in the order we now decide them and it was well within its discretion to do so. Whether or not some members of this en banc panel might have chosen a different approach had they been sitting as members of the original three-judge panel is immaterial at this stage of the proceedings. The question of the EAJA's applicability to deportation proceedings is an important one. We granted the petition for rehearing en banc to consider the merits of the original panel's decision on that point. Having done so, we see no justification for now refusing to decide an issue that has already consumed an inordinate amount of judicial time and effort and that the government, as well as the petitioner, strongly urges us to decide without further delay. It is now three opinions and more than three years since we were asked to determine whether the EAJA applies to deportation proceedings. It

would be odd indeed were we now to decline to do so because of a preference, guided by no articulable standards, as to the order in which we should decide statutory issues.

**1.** "The controversy 'must be a real and substantial [one] admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Chadha v. INS*, 634 F.2d 408, 419 (9th Cir.1980), *aff'd*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937)).

**2.** In *Chadha v. INS, supra*, 634 F.2d at 419, we determined that there was sufficient adverseness to constitute a justiciable case stating:

"Chadha has asserted a concrete controversy, and our decision will have real meaning: if we rule for Chadha, he will not be deported; if we uphold [the statute], the INS will execute its order and deport him."

stantial likelihood that the judicial relief requested will prevent or redress the claimed injury...." *INS v. Chadha,* 462 U.S. 919, 936, 103 S.Ct. 2764, 2776, 77 L.Ed. 2d 317 (1983) (quoting *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 79, 98 S.Ct. 2620, 2633, 57 L.Ed.2d 595 (1978)). We are thus precluded from considering the issue of whether the EAJA applies to deportation proceedings. The majority's discussion and ultimate determination of this issue amounts to nothing more than an advisory opinion that we are powerless to render. U.S. Const. Article III, § 2; *FCC v. Pascifica Foundation,* 438 U.S. 726, 735, 98 S.Ct. 3026, 3033, 57 L.Ed.2d 1073, *reh. denied,* 439 U.S. 883, 99 S.Ct. 227, 58 L.Ed.2d 198 (1978); *Paschall v. Christie-Stewart, Inc.,* 414 U.S. 100, 101–02, 94 S.Ct. 313, 314–15, 38 L.Ed.2d 298 (1973); *Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969).

This case in fact illustrates most of the reasons why Article III, § 2 has been construed to forbid advisory opinions. One is a desire to conserve judicial time and effort by avoiding unnecessary adjudication. Secondly, a practice of giving advisory opinions would promote friction with the other branches of government. Thirdly, advisory opinions often turn out to have no consequence on the particular litigant involved. This is aptly illustrated in the majority's final paragraph. Finally, because an advisory opinion may be less consequential than a decision in an actual controversy, the parties may not invest sufficient resources in contesting the issues to give the court the information it needs to decide them correctly.

What the majority has done is render an advisory opinion. Escobar Ruiz did not demonstrate he was a prevailing party when he first appealed, *Escobar Ruiz v. INS,* 787 F.2d 1294, 1298 (9th Cir.1986), and he has not done so to date. *Majority Op.* at 1029 ("Escobar Ruiz is not presently a prevailing party").

If and when Escobar Ruiz shows prevailing party status on the merits of his claim, then we should decide whether the EAJA applies to deportation proceedings. Until then, we have circumvented our responsibility under Article III, § 2 to decide cases and have instead acted in a capacity reserved for the legislative branch. I would hold that Ruiz's appeal is not presently justiciable.