Earle CLARKE, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

Nos. 89–3477, 90–3125.

United States Court of Appeals,
Third Circuit.

Argued Jan. 19, 1990.

Decided May 24, 1990.

Lawrence H. Rudnick (argued), Steel, Rubin and Rudnick, Philadelphia, Pa., for petitioner.

Joseph F. Ciolino, David J. Kline, Lori L. Scialabba (argued), Office of Immigration Litigation, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for respondent.

Before HIGGINBOTHAM, Chief Judge, BECKER and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Chief Judge.

Petitioner Earle Clarke is a Jamaican citizen who prevailed in deportation proceedings brought by the respondent Immigration and Naturalization Service ("INS"). He now petitions for review of a decision by the Board of Immigration Appeals ("BIA") denying his request for attorneys' fees under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504. Because we conclude that the EAJA does not apply to deportation proceedings before the INS, we will deny Clarke's consolidated petitions for review.[1]

### I. Background

The INS commenced deportation proceedings against the petitioner on August 10, 1988, with the issuance of an Order to Show Cause charging that Clarke was deportable under 8 U.S.C. § 1251(a)(11) as an alien who had been convicted of knowingly and intentionally possessing a controlled substance. On January 10, 1989, an immigration judge dismissed the deportation proceedings after a hearing because the INS did not present a certified record of Clarke's conviction, and because of the agency's apparent concession at the hearing that his conviction under Pennsylvania's Accelerated Rehabilitative Disposition Program was an insufficient basis for deportation under section 1251(a)(11). Administrative Record ("A.R.") at 40–41.

On January 17, 1989, Clarke submitted an application to the immigration judge for attorneys' fees and costs under the EAJA. In his July 10, 1989 decision denying this application, the immigration judge found that Clarke met the basic requirements for an EAJA award, but concluded that the BIA's holdings in *Matter of Anselmo*, Interim Decision 3105 (BIA 1989), and *Matter of Fede*, Interim Decision 3106 (BIA 1989),[2] and the Attorney General's regulation on the EAJA's coverage in Department of Justice proceedings, 28 C.F.R. § 24.103,[3] required him to dismiss Clarke's EAJA application for lack of jurisdiction.

Clarke appealed the immigration judge's decision to the BIA. Replying on *Matter of Fede* and 28 C.F.R. § 24.103, the BIA determined that "absent a regulatory change or controlling court order, an immigration judge has no authority under law or regulation to consider an application for attorney fees under the provisions of the EAJA." A.R. at 3. Accordingly, the BIA dismissed Clarke's appeal and denied his application for attorneys' fees.

### II. Discussion

This case requires us to determine whether the Equal Access to Justice Act applies to deportation proceedings. We have plenary review over the agency's determination of this question of law. *See*

---

1. On July 17, 1989, Clarke filed a petition for review of the immigration judge's decision in this court, which was docketed under No. 89–3477. Two days later, he filed an administrative appeal of the immigration judge's decision with the BIA. On February 14, 1990, after oral argument in this case, the BIA issued an order dismissing his administrative appeal and denying his application for attorneys' fees and costs. On March 9, 1990, Clarke filed a petition for review of the BIA decision, which was docketed under No. 90–3125. With the agreement of both parties, we have consolidated the petitions.

2. In Matter of Anselmo, the Board of Immigration Appeals held that deportation proceedings are not covered by the EAJA because they are not "adversary adjudications" within the meaning of 5 U.S.C. § 504(b)(1)(C). The BIA also stated that it was without authority to contravene 28 C.F.R. § 24.103, the Attorney General's

regulation on EAJA's applicability to Department of Justice Proceedings. *See* note 3, *infra*. However, the BIA also held that the contrary ruling of the court in *Escobar Ruiz v. INS*, 838 F.2d 1020 (9th Cir.1988) (en banc), was to be followed in deportation cases arising within the Ninth Circuit.

In Matter of Fede, the BIA applied its *Anselmo* holding to an exclusion proceeding arising in the Eleventh Circuit. The BIA stated that because an immigration judge has "no authority to consider an application for attorney fees and costs under the EAJA," the judge properly denied the petitioner's EAJA application. *Fede*, Interim Decision 3106 at 4.

3. 28 C.F.R. § 24.103 specifies the administrative proceedings conducted by the Department of Justice which are covered by the Equal Access to Justice Act. INS deportation proceedings are not among the enumerated proceedings.

*INS v. Cardoza–Fonseca,* 480 U.S. 421, 445–48, 107 S.Ct. 1207, 1220–22, 94 L.Ed.2d 434 (1987).

Under the Equal Access to Justice Act, parties in certain adversary administrative proceedings may recover attorneys' fees and costs from the government. In pertinent part, 5 U.S.C. § 504(a)(1) provides that "[a]n agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust." Under 5 U.S.C. § 504(b)(1)(C)(i), an "adversary adjudication" is defined as "an adjudication under section 554 of this title [5 U.S.C. § 554] in which the position of the United States is represented by counsel or otherwise...." Section 554 of Title 5 defines the scope and coverage of the Administrative Procedure Act ("APA"). The dispositive issue in this case is whether deportation proceedings are adversary adjudications "under section 554" of the APA and are thus covered by the EAJA.[4]

If an adjudication "under section 554" means an adjudication "governed by" or "conducted under" section 554 of the APA, then the EAJA clearly does not apply to deportation proceedings. In section 242(b) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1252(b), Congress provided that the regulations governing deportation proceedings promulgated under that Act "shall be the sole and exclusive procedure for determining the deportability of an alien under this section." In *Marcello v. Bonds,* 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107 (1955), the Supreme Court interpreted this provision to mean that the APA's hearing procedures do not apply to deportation proceedings before INS hearing officers. The Court noted that although the APA served as a "model" for the hearing provisions of the immigration statute, the Immigration and Nationality Act is the governing enactment in deportation matters:

> [W]e cannot ignore the background of the 1952 immigration legislation, its laborious adaptation of the Administrative Procedure Act to the deportation process, the specific points at which deviations from the Administrative Procedure Act were made, the recognition in the legislative history of this adaptive technique and of the particular deviations, and the direction in the statute that the methods therein prescribed shall be the sole and exclusive procedure for deportation proceedings. Unless we are to require the Congress to employ magical passwords in order to effectuate an exemption from the Administrative Procedure Act, we must hold that the present statute expressly supersedes the hearing provisions of that Act.

*Id.* at 310, 75 S.Ct. at 762. Following *Marcello,* this court has held that the review of adjustment of status and deportation orders by the Board of Immigration Appeals is also exempt from APA requirements. *Giambanco v. INS,* 531 F.2d 141, 144 (3d Cir.1976). *See also Cisternas–Estay v. INS,* 531 F.2d 155, 158–59 (3d Cir.) (APA does not apply to BIA review of order denying suspension of deportation), *cert. denied,* 429 U.S. 853, 97 S.Ct. 145, 50 L.Ed.2d 127 (1976); *Ho Chong Tsao v. INS,* 538 F.2d 667, 669 (5th Cir.1976) (APA does not apply to BIA review of deportation order), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1176, 51 L.Ed.2d 582 (1977).

Clarke concedes that the exclusive hearing procedures of 8 U.S.C. § 1252(b) supersede the hearing provisions of the APA, and thus that section 554 does not *govern* INS deportation proceedings. However, he argues that, for the purposes of the EAJA, an adjudication "under section 554" does not mean an adjudication "governed by" section 554. Clarke asserts that the phrase "an adjudication under section 554" encompasses adjudications that are conducted

---

4. Under the definition of "adversary adjudication" in 5 U.S.C. § 504(b)(1)(C)(i) the position of the government must be "represented by counsel or otherwise." That requirement is satisfied here. The position of the United States in the underlying administrative proceeding was represented by an INS attorney, as is typically the situation in deportation cases.

consistent with the substantive requirements of section 554, even if they are not directly governed by that provision. Because the procedures governing deportation hearings under the Immigration and Nationality Act are similar to the procedures described in section 554, Clarke contends, deportation proceedings are "adversary adjudications" within the meaning of 5 U.S.C. 504(b)(1)(C).

In support of his position, Clarke cites *Escobar Ruiz v. INS*, 838 F.2d 1020 (9th Cir.1988) (en banc), in which the United States Court of Appeals for the Ninth Circuit held that the EAJA applies to deportation proceedings. That court stated that the phrase "an adjudication under section 554" was ambiguous as the language could mean either an adjudication "governed by" the APA or an adjudication "as defined by" the APA. It considered that both constructions were "plausible," but that the broader reading was supported by the EAJA's legislative history, its remedial purposes, and the interpretation given the statute by the Administrative Conference of the United States ("ACUS"). *Id.* at 1023–26.

Although we share the concern of the court in *Escobar Ruiz* about the difficulties faced by unrepresented aliens in deportation proceedings, *see id.* at 1026, we cannot legitimately act on our concern by applying the EAJA to deportation proceedings. Given the Supreme Court's admonishment that statutes waiving the government's general immunity from attorneys' fee claims must be "construed strictly in favor of the sovereign" and not "[e]nlarged ... beyond what the language requires," *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685–86, 103 S.Ct. 3274, 3278, 77 L.Ed.2d 938 (1983) (quoting

*McMahon v. United States*, 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951), and *Eastern Transportation Co. v. United States*, 272 U.S. 675, 686, 47 S.Ct. 289, 291, 71 L.Ed. 472 (1927)), *Escobar Ruiz*'s interpretation of "an adjudication under section 554" strikes us as strained and untenable.

In our view, *Escobar Ruiz* was justifiably criticized in *Owens v. Brock*, 860 F.2d 1363 (6th Cir.1988), and *St. Louis Fuel and Supply Co., Inc. v. FERC*, 890 F.2d 446 (D.C.Cir.1989), for its expansive statutory interpretation.[5] In *Owens*, the United States Court of Appeals for the Sixth Circuit held that workers' compensation hearings conducted pursuant to the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101 et seq., are not adversary adjudications under the EAJA, since FECA explicitly excludes such proceedings from section 554.[6] The court rejected *Escobar Ruiz*'s view that EAJA's legislative history showed that the statutory phrase "under section 554" meant "as defined by section 554." The court noted that a 1980 House Conference report described an "adversary adjudication" as "an agency adjudication *defined under* the Administrative Procedure[ ] Act where the agency takes a position through representation by counsel or otherwise." *Owens*, 860 F.2d at 1365 (quoting H.R.Conf.Rep. No. 1434, 96th Cong., 2d Sess. 23, *reprinted in* 1980 U.S. Code Cong. & Admin.News at 4953, 5012 (emphasis added)). However, the *Owens* court observed that this bit of legislative history furnished only "ephemeral" support for the expansive holding in *Escobar Ruiz*.

---

5. We note also that in *Smedberg Machine & Tool, Inc. v. Donovan*, 730 F.2d 1089 (7th Cir. 1984), a pre-*Escobar Ruiz* decision, the court held that labor certification proceedings before the Department of Labor were not adversary adjudications "under section 554" because hearings were not statutorily required, a prerequisite for coverage under that section. The court rejected an "expansive reading" of the phrase "adjudication under section 554," noting that because the EAJA is "a waiver of the sovereign's traditional immunity from claims for attorney's fees", it had to be "construed strictly in favor of the United States." 730 F.2d at 1093.

6. FECA expressly provides in 5 U.S.C. § 8124(b)(2) that the hearing officer in workers' compensation proceedings "is not bound by common law or statutory rules of evidence, by technical or formal rules of procedure, *or by section 554 of this title*...." (emphasis added). Although the language exempting FECA hearings from APA requirements is perhaps more explicit than the exclusivity clause of 8 U.S.C. § 1252(b), we believe that the latter provision is equally emphatic in its effect, as it states that the statutory procedure for deportation proceedings is "the sole and exclusive procedure for determining the deportability of an alien...."

The use of the words "defined under" by the House Conference report is not particularly instructive. There is no evidence in the legislative history to indicate that the conference committee understood the term "defined under" to include within EAJA coverage those proceedings that are not governed by section 554 but instead are merely conducted in a similar manner. In fact, the use of a concrete term such as "defined" leads us to believe it probable that Congress intended precisely the opposite interpretation of section 504(b)(1)(C) from the one taken by the Ninth Circuit. 860 F.2d at 1366. The court also rejected the Ninth Circuit's reliance on the ACUS's model rules on the implementation of the EAJA, noting that "the ACUS rules both eschew a broad interpretation of 504(b)(1)(C) and embrace the 'governed under' standard rejected in *Escobar Ruiz*." *Id.*

In *St. Louis Fuel*, the United States Court of Appeals for the District of Columbia also rejected a broad interpretation of "under section 554." The court there observed that proceedings challenging a Department of Energy's price regulation remedial order were not "adversary adjudications" under the EAJA. The court observed that, unlike section 554, the statutory authority for such proceedings, 42 U.S.C. § 7193(c), did not require hearings to be held "on the record." The court observed that the statutory language and the legislative history did not establish that "Congress intended to *require* full agency adherence to all section 554 procedural components." 890 F.2d at 449 (emphasis in original).

Like the *Owens* court, the court in *St. Louis Fuel* criticized *Escobar Ruiz* for its expansive analysis of the EAJA's legislative history. *Id.* at 450–51. The *St. Louis Fuel* court also took issue with *Escobar Ruiz*'s statutory construction, pointing out that the word "under" appears several times in the EAJA,[7] in places where the term clearly means "subject [or pursuant] to" or "by reason of the authority of." *Id.* at 450. The court stated, and we agree, that the word "under" in 5 U.S.C. § 504(b)(1)(C)(i) cannot be construed broadly, "because the usage of the word in EAJA itself tugs against such creative reading, and because we are bound to honor the canon that waivers of the sovereign's immunity must be strictly construed." *Id.* at 449–50.

The *Escobar Ruiz* court was persuaded that the EAJA's applicability to disability determination proceedings under the Social Security Act established that Congress favored a broad interpretation of "adjudication under section 554." In the legislative history of the 1985 EAJA amendment and extension, Congress confirmed that Social Security hearings "in which the Secretary is represented are covered by the [EAJA]." *Escobar Ruiz*, 838 F.2d at 1026–27 (quoting H.R.Rep. No. 120, 99th Cong., 1st Sess., pts. 1, 10, *reprinted in* 1985 U.S.Code Cong. & Admin.News at 132, 138–39). After first noting the uncertainty about the APA's applicability to social security proceedings, the *Escobar Ruiz* court found that it was "clear from this history that Congress did not consider the uncertainty as to the APA's applicability ... relevant to the question of the EAJA's applicability.... Rather, Congress was concerned only with the fact that social security hearings are of the type defined under section 554." *Id.* at 1027.

For a number of reasons, we are unable to draw such a clear conclusion from the legislative history. First, we note that

7. *St. Louis Fuel*, 890 F.2d at 450, cited the following EAJA provisions to support its statutory analysis:

A party seeking an award of fees and other expenses shall, ... submit to the agency an application which shows that the party is a prevailing party and is eligible to receive an award *under* this section....

5 U.S.C. § 504(a)(2).

If a party other than the United States is dissatisfied with a determination of fees and other expenses made *under* subsection (a)....

5 U.S.C. § 504(c)(2).

Fees and other expenses awarded *under* this subsection shall be paid by any agency over which the party prevails from any funds made available to the agency by appropriation or otherwise.

5 U.S.C. § 504(d).
(emphasis added).

while the Supreme Court has never retreated from the essential holding in *Marcello* that the APA does not apply to deportation hearings, the Supreme Court, like this court,[8] has never ruled definitively on the applicability of the APA to Social Security proceedings. Somewhat to the contrary, the Court has observed that "the social security administrative procedure does not vary from that prescribed by the APA." *Richardson v. Perales*, 402 U.S. 389, 409, 91 S.Ct. 1420, 1431, 28 L.Ed.2d 842 (1971).[9] In any event, the EAJA's 1985 legislative history strongly suggests that Congress believed social security proceedings to be covered by section 554, but considered that the hearings were not "adversary adjudications" within the meaning of EAJA because the position of the United States was typically not represented by counsel. H.R. Rep. No. 120, *supra*, *reprinted in* 1985 U.S.Code Cong. & Admin.News at 138.

Second, we observe that, in amending and extending the EAJA in 1985, Congress remained silent about EAJA's application to deportation proceedings despite the Attorney General's clear 1984 regulation which excluded deportation proceedings from EAJA's reach, 28 C.F.R. § 24.103. Although we cannot assume that Congress implicitly ratified the Attorney General's interpretation of the EAJA's reach, we likewise cannot conclude from the ambiguous legislative record that Congress intended to overturn that regulation.

Third, there is nothing in the EAJA's legislative history that qualifies or explains Congress' pronouncement in § 292 of the Immigration and Naturalization Act of 1952, 8 U.S.C. § 1362, that an alien in deportation proceedings "shall have the privilege of being represented (*at no expense to the Government*) by such counsel, authorized to practice in such proceedings, as he shall choose" (emphasis added). Clarke suggests that the parenthetical language simply reflects Congress' intent that the right to counsel in deportation proceedings not be extended to include the right to *appointed* counsel for indigent aliens. Viewed in this light, the petitioner's argument that this language should not be construed as an independent statutory bar against fee-shifting is plausible. *See Escobar Ruiz*, 838 F.2d at 1027–29. However, it is also plausible that Congress, in providing for fee-shifting in the EAJA, did not intend to disturb its longstanding proscription against government funding of counsel for aliens in deportation proceedings. In the absence of a more definitive expression of legislative intent, and in view of the limited nature of statutory exceptions to sovereign immunity, we do not believe that we can resolve this ambiguity in Clarke's favor.

Finally, we note that in two instances Congress expanded the 5 U.S.C. § 504(b)(1)(C) definition of "adversary adjudication" to include proceedings that had previously been considered outside the EAJA's scope. In 1985, Congress legislatively overruled the holding of *Fidelity Construction Co. v. U.S.*, 700 F.2d 1379 (Fed.Cir.), *cert. denied*, 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983), by amending section 504(b)(1)(C) to include certain administrative proceedings under section 6 of the Contract Disputes Act of 1978, 41 U.S.C. § 605. Equal Access to Justice Act, Extension and Amendment, Pub.L. No. 99–80, § 1(c)(2)(B), 99 Stat. 184 (1985). *See* H.R.Rep. No. 120, *supra*, *reprinted in* 1985 U.S.Code Cong. & Admin.News at

---

8. *See Keegan v. Heckler*, 744 F.2d 972, 975 (3d Cir.1984) (assuming, without directly deciding, that the liberal APA evidentiary rules apply to hearings before the Social Security Administration); *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 n. 1 (3d Cir.) (stating that the court need not determine whether the APA supersedes the Social Security Act with respect to judicial review of final agency decisions, because the standards of judicial review under both statutes are identical), *cert. denied*, 402 U.S. 976, 91 S.Ct. 1680, 29 L.Ed.2d 142 (1971).

9. More recently, the Court noted that "for purposes of the EAJA Social Security benefit proceedings are not 'adversarial' within the meaning of [5 U.S.C.] § 504(b)(1)(C) either initially or on remand from a court." *Sullivan v. Hudson*, — U.S. —, 109 S.Ct. 2248, 2257, 104 L.Ed.2d 941 (1989). However, this conclusion was not based on the inapplicability of the APA to disability proceedings, but was based on the fact that the "plain language" of § 504(b)(1)(C) "requires that the United States be represented by 'counsel or otherwise,' and neither is true in this context." *Id.*

144. In 1986, Congress further amended the same section of the EAJA to include proceedings under the Program Fraud Civil Remedies Act of 1986, 31 U.S.C. § 3801. Budget Reconciliation Act of 1986, Pub.L. No. 99–509, § 6103(c), 100 Stat.1948 (1986). Although these amendments are certainly not determinative of the EAJA's applicability to other administrative proceedings, they do show Congress' inclination to act affirmatively to extend the EAJA to include proceedings that do not clearly meet the statutory definition of "adversary adjudications." This history makes us reluctant to *imply* a legislative intent to include deportation proceedings within the EAJA.

We agree with the court in *St. Louis Fuel* that the coverage of the EAJA should be determined by a bright-line rule: "[a]ttorneys' fees may be awarded in adversary adjudications that are governed by APA section 554; they may not be awarded in adversary adjudications that Congress did not subject to that section." 890 F.2d at 451. A more creative interpretation of the statutory language would involve the court in case-by-case determinations of "whether a particular proceeding is close enough to a section 554 hearing to be an adjudication 'as defined by' that section or 'of the type referred to' in it." *Id.*[10]

### III. Conclusion

We recognize that the essential objective of the EAJA—to ensure that persons "will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved in vindication of their rights" H.R.Rep. No. 120, *supra, reprinted in* 1985 U.S.Code Cong. & Admin.News at 132–33—would certainly be served by making the statute applicable to deportation proceedings. However, we believe that our holding is compelled by the canons of statutory interpretation and the limited nature of waivers of sovereign immunity. It is the province of Congress, not the courts, to rewrite the statute to include proceedings that are not clearly within its scope.

In sum, the petitioner has failed to demonstrate that Congress intended for the EAJA to apply to administrative deportation proceedings. By its terms, the EAJA applies to adversary proceedings "under" 5 U.S.C. § 554. In our view, the clear and unambiguous meaning of this statutory language is that the EAJA is to apply only to those proceedings conducted under the authority of section 554. Because deportation proceedings are not governed by section 554, and because this case does not present one of those "rare and exceptional circumstances" where legislative history justifies departure from the plain words of the statute, *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981) (quoting *Crooks v. Harrelson*, 282 U.S. 55, 60, 51 S.Ct. 49, 50, 75 L.Ed. 156 (1930)), we hold that the EAJA does not apply to deportation proceedings before the Immigration and Naturalization Service.

Accordingly, we will affirm the decision of the Board of Immigration Appeals and deny the petitions for review.

---

10. We note that case-by-case litigation over application of the *Escobar Ruiz* definition of "under section 554" has already begun in the Ninth Circuit. *See Haire v. United States*, 869 F.2d 531 (9th Cir.1989) (holding that administrative proceedings under the Export Administration Act are not adversary adjudications within the meaning of the EAJA).