**Ana Lucia HODGE, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Respondent.**

**No. 90–4122.**

United States Court of Appeals, Fifth Circuit.

April 4, 1991.

Richard S. Fischer, Nacogdoches, Tex., for petitioner.

Kimberly J. Barton, Gen. Atty. U.S. Dept. of Justice, I.N.S., Exec. Office for Immigration Review, Office of Immigration Judge, Houston, Tex., U.S. Dept. of Justice, Exec. Office for Immigration Review Bd. of Immigration Appeals, Falls Church, Va., for respondent.

Lori L. Scialabba, Alice M. Smith, Mark C. Walters, Asst. Director, Office of Immigration Litigation, Washington, D.C., for I.N.S.

Before GOLDBERG, KING and DUHÉ, Circuit Judges.

KING, Circuit Judge:

Petitioner Ana Lucia Hodge (Hodge) is a Colombian citizen who prevailed in deportation proceedings brought by the respondent Immigration and Naturalization Service (INS). She now petitions for review of a decision by the Board of Immigration Appeals (BIA) denying her motion for attorney's fees and expenses under the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504. We find that the EAJA does not apply to deportation proceedings before the INS, and therefore deny Hodge's petition for review.

## I. *Background*

The INS commenced deportation proceedings against Hodge on August 3, 1988, with the issuance of an Order to Show Cause, charging that Hodge was deportable under 8 U.S.C. § 1251(a)(2) as an alien who remained in the United States for a longer period of time than permitted by the INS. A superseding Order to Show Cause was issued on December 8, 1988, in which Hodge was charged to be deportable under 8 U.S.C. § 1251(a)(9)(B) as an alien whose conditional permanent residence was terminated under 8 U.S.C. § 1186a.

On February 22, 1989, an immigration judge terminated the deportation proceedings as improvidently begun in light of INS's failure to comply with 8 C.F.R. § 103.2(b)(2) when terminating the petitioner's conditional permanent resident status. On March 23, 1989, Hodge submitted a motion for attorney's fees under the EAJA. The immigration judge dismissed Hodge's request for lack of jurisdiction. On June 7, 1989, Hodge appealed the decision of the immigration judge to the BIA. The BIA affirmed the decision of the immigration judge and dismissed the appeal on February 1, 1990, on the basis that the Attorney General "has determined that immigration proceedings do not come within the scope of the EAJA" and "absent a regulatory change or controlling court order, an immigration judge has no authority under law or regulation to consider an application for attorney fees under the provisions of the EAJA."

## II. *Discussion*

Under the Equal Access to Justice Act, parties in certain adversary administrative proceedings may recover attorneys' fees and costs from the government. 5 U.S.C. § 504(a)(1) provides that "[a]n agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust." The EAJA primarily serves to

ensure that individuals "will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved in securing the vindication of their rights."[1]

Under 5 U.S.C. § 504(b)(1)(C)(i), an "adversary adjudication" is defined as "an adjudication under section 554 of this title in which the position of the United States is represented by counsel or otherwise...." Section 554 of Title 5 delineates the procedures for agency adjudications required under the Administrative Procedure Act (APA). Our determination of whether the EAJA applies to deportation proceedings before the INS requires us to consider the interrelationship between the INA, the APA, and the EAJA. Specifically, we must decide in this case whether Congress, in defining the scope of the EAJA, intended the term "under section 554" to encompass deportation proceedings.

Deportation proceedings (brought pursuant to the INA) comport closely with the requirements of the APA because the procedural dictates for deportation proceedings were modeled after the APA's requirements for adjudications. *See Marcello v. Bonds*, 349 U.S. 302, 309, 75 S.Ct. 757, 761, 99 L.Ed. 1107 (1955). Given the close resemblance of deportation proceedings to APA adjudications, Hodge asserts that the delimiting phrase of the EAJA—adjudications "under section 554"—applies to adjudications conducted consistent with the requirements of section 554, even if they are not directly governed by section 554.[2]

## A. Statutory Analysis of the EAJA

### 1. *Statutory Language*

Hodge relies on the Ninth Circuit case *Escobar Ruiz v. INS*, 838 F.2d 1020 (9th Cir.1988) (en banc) (holding EAJA applies to deportation proceedings), for the proposition that the words "under section 554"—as used in section 504 of the EAJA—encompass adjudications "as defined by section 554." *Id.* at 1024. The Ninth Circuit found that this reading was supported by the EAJA's legislative history, its remedial purposes, and the interpretation given the statute by the Administrative Conference of the United States (ACUS). *Id.* at 1023–26.

Other circuits, however, have reached a contrary conclusion. The Third, Sixth, Eleventh, and D.C. Circuits have all stated that, although the remedial purposes of the EAJA would be served by applying it to deportation proceedings, neither the statutory language nor the legislative history of the EAJA supports the finding that Congress intended the EAJA to reach deportation proceedings. With respect to the usage of the word "under" in the EAJA, the D.C. Circuit—in addressing the question whether "under" could mean "as defined by,"—was "unwilling so to stretch the word 'under' because the usage of the word in EAJA itself tugs against such creative reading...." *St. Louis Fuel and Supply Co. v. FERC*, 890 F.2d 446, 449

---

1. H.R.Rep. No. 120, 99th Cong., 1st Sess. 4 (1985), *reprinted in* 1985 U.S.Code Cong. & Admin.News 132, 132–33.

2. The Supreme Court held in *Marcello v. Bonds* that the statutory provisions of the INA related to deportation proceedings expressly supersede the hearing provisions of the APA. 349 U.S. at 310, 75 S.Ct. at 761. According to the Ninth Circuit's interpretation of *Marcello* in *Escobar Ruiz v. INS*, 838 F.2d 1020 (9th Cir.1988) (en banc), *Marcello* held only that the INA supercedes the APA's hearing provisions where the two statutes diverge. Because the hearing provisions of the two statutes have, since *Marcello* was decided, become "fundamentally identical," the court reasoned that there is nothing for the INA to supercede and the *Marcello* holding therefore does not apply to foreclose the application of the EAJA to deportation proceedings.

838 F.2d at 1025. We are not convinced by the Ninth Circuit's argument. Even though the technical holding of *Marcello* was that the INA supercedes the APA, the Court referred to "the direction in the [INA] that the methods therein prescribed shall be the *sole and exclusive* procedure for deportation proceedings." 349 U.S. at 310, 75 S.Ct. at 762 (emphasis added). The Court stated, moreover, that "this clear and categorical direction was meant to *exclude* the application of the Administrative Procedure Act...." *Id.* at 309, 75 S.Ct. at 761 (emphasis added). The Court stated, finally, that the APA "was intended only as a model." *Id.* Based upon this language, we cannot conclude that the Supreme Court intended to leave open the possibility that the APA would "govern" deportation proceedings if the INA and the APA became functionally equivalent.

(D.C.Cir.1989).[3]

The court noted that the usage of the word "under" at other locations within the EAJA could mean nothing other than "subject [or pursuant] to" or "by reason of the authority of." [4] The *St. Louis* court noted, furthermore, that the meaning of "under" that it gleaned from the EAJA's use of the word in other locations of the Act comports with its dictionary definition, while the alternative definitions suggested by Hodge do not. *Id.* at 450 n. 4.

We are to assume " 'that the legislative purpose is expressed by the ordinary meaning of the words used' " in the statute,[5] and find, based on the foregoing, that the ordinary meaning of "under," especially in the context of the EAJA, appears to be "governed by" or "subject to." In "rare and exceptional circumstances," however, legislative history justifies departure from the plain language of a statute because it evinces legislative intent contrary to that language.[6] We therefore examine the legislative history of the EAJA to ascertain whether Congress implied an intention to extend the EAJA to deportation proceedings.

### 2. *Legislative History*

Turning to the legislative history of the EAJA for support, Hodge notes that the *Escobar Ruiz* court relied, in part, on a 1980 House conference report that described an "adversary adjudication" as "an agency adjudication *defined under* the Administrative Procedure Act where the agency takes a position through representation by counsel or otherwise." 838 F.2d at 1023 (quoting H.R.Conf.Rep. No. 1434, 96th Cong., 2d Sess. 23 (1980), *reprinted in* 1980 U.S.Code Cong. & Admin.News 5003, 5012 (emphasis added)). Several circuits have since stated, however, that this bit of legislative history provides very attenuated support for the *Escobar Ruiz* court's expansive holding.

For example, the Sixth Circuit stated in *Owens v. Brock* that

[t]he use of the words "defined under" by the House Conference report is not particularly instructive. There is no evidence in the legislative history to indicate that the conference committee understood the term "defined under" to include within EAJA coverage those proceedings that are not governed by section 554 but instead are merely conducted in a similar manner. In fact, the use of a concrete term such as "defined" leads us to believe it probable that Congress intended precisely the opposite interpretation of section 504(b)(1)(C) from the one taken by the Ninth Circuit.

860 F.2d 1363, 1366 (6th Cir.1988).[7] The D.C. Circuit, moreover, in *St. Louis*, criticizes the *Escobar Ruiz* court's reading of

---

**3.** The *St. Louis* court held that proceedings under the Department of Energy Organization Act provision on contests to remedial orders were not "adversary adjudications" covered by the EAJA.

**4.** The D.C. Circuit cited the following examples from the EAJA to support its analysis:

> A party seeking an award of fees and other expenses shall ... submit to the agency an application which shows that the party is a prevailing party and is eligible to receive an award *under* this section....
>
> 5 U.S.C. § 504(a)(2) (emphasis added).
>
> If a party other than the United States is dissatisfied with a determination of fees and other expenses made *under* subsection (a)....
>
> 5 U.S.C. § 504(c)(2) (emphasis added).
>
> Fees and other expenses awarded *under* this *subsection shall be paid by any agency over* which the party prevails from any funds

made available to the agency by appropriation or otherwise.

5 U.S.C. § 504(d) (emphasis added).

890 F.2d at 450.

**5.** *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982) (quoting *Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962)).

**6.** *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981) (quoting *Crooks v. Harrelson,* 282 U.S. 55, 60, 51 S.Ct. 49, 50, 75 L.Ed. 156 (1930)).

**7.** In *Owens,* the Sixth Circuit held that workers' compensation hearings conducted pursuant to the Federal Employees' Compensation Act (FECA), 5 U.S.C. § 8101 *et seq.,* are not adversary adjudications under the EAJA, since FECA explicitly exempts such proceedings from section 554 hearing requirements.

the conference report, pointing out, *inter alia*, that the definition provision placed in the conference text was identical to the one reported by the House Judiciary Committee, whose report indicates that "under" means "subject to." 890 F.2d at 450–51.

In a recent Third Circuit opinion, moreover, the court stated that "*Escobar Ruiz's* interpretation of 'an adjudication under section 554' strikes us as strained and untenable. In our view, *Escobar Ruiz* was justifiably criticized in *Owens v. Brock* and *St. Louis Fuel and Supply Co.* for its expansive statutory interpretation." *Clarke v. INS,* 904 F.2d 172, 175 (3rd Cir.1990) (citations omitted). The Eleventh Circuit also rejects the Ninth Circuit's statutory interpretation, stating that they "are persuaded by the reasoning of the Sixth and District of Columbia Circuits as well as ... [the] Third Circuit decision" that Congress intended "under" in section 504 to mean "governed by" or "subject to" section 554. *Ardestani v. United States Dep't of Justice, INS,* 904 F.2d 1505, 1510–11 (11th Cir.1990).

Despite the overwhelming judicial authority to the contrary, we nevertheless consider Hodge's arguments in turn. Among other things, she finds support for her position in Congress' statement—in the legislative history to the 1985 amendments to the EAJA—that social security administrative hearings in which the government is represented by counsel are covered by the EAJA.[8] She argues that prior to this clarification, Congress had not determined whether the APA applied to social security hearings; therefore, in deciding to apply the EAJA to social security hearings, Congress was demonstrating its intent to enlarge the scope of the EAJA *beyond* adversary adjudications clearly "governed" by section 554. The Third Circuit, however, was "unable to draw such a clear conclusion from the legislative history" and stated that "the EAJA's 1985 legislative history strongly suggests that Congress believed social security proceedings to be covered by section 554, but considered that the hearings were not 'adversary adjudications' within the meaning of EAJA because the position of the United States was typically not represented by counsel." 904 F.2d at 176, 177. We agree with the analysis of the Third Circuit.

In two instances Congress has, on the other hand, affirmatively extended the EAJA to encompass proceedings previously considered outside the ambit of that statute. In 1985, Congress amended section 504(b)(1)(C) to include certain administrative proceedings under section 6 of the Contract Disputes Act of 1978, 41 U.S.C. § 605.[9] In 1986, Congress further amended that section of the EAJA to include proceedings under the Program Fraud Civil Remedies Act of 1986, 31 U.S.C. § 3801.[10] We believe that Congress' narrowly tailored, rather than blanket, extensions of the EAJA to very specific types of administrative proceedings lends further support to the inference that Congress did not intend for the EAJA to reach deportation proceedings.[11]

---

**8.** *See* H.R.Rep. No. 120, 99th Cong., 1st Sess. 10 (1985), *reprinted in* 1985 U.S.Code Cong. & Admin.News 132, 138–39.

**9.** Equal Access to Justice Act, Extension and Amendment, Pub.L. No. 99–80, § 1(c)(2)(B), 99 Stat. 184 (1985). Through this amendment, Congress legislatively overruled the holding of *Fidelity Constr. Co. v. United States,* 700 F.2d 1379 (Fed.Cir.), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983). *See* H.R.Rep. No. 120, *reprinted in* 1985 U.S.Code Cong. & Admin.News 132, 144.

**10.** Omnibus Budget Reconciliation Act of 1986, Pub.L. No. 99–509, § 6103(c), 100 Stat. 1948 (1986).

**11.** *See National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974) ("A frequently stated principle of statutory construction is that when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies.... This principle of statutory construction reflects an ancient maxim—

Moreover, prior to Congress' amendment of the EAJA in 1985, the Attorney General, in 1984, promulgated a regulation that excluded deportation proceedings from the EAJA.[12] We agree with the *Clarke* court's statement that "[a]lthough we cannot assume that Congress implicitly ratified the Attorney General's interpretation of the EAJA's reach, we likewise cannot conclude from the ambiguous legislative record that Congress intended to overturn that regulation." *Clarke*, 904 F.2d at 177. We are also confronted with the congressional provision in section 292 of the INA, 8 U.S.C. § 1362, that an alien in deportation proceedings "shall have the privilege of being represented (*at no expense to the Government*)" by counsel of his choice (emphasis added). This provision, which precludes the right to *appointed* counsel in deportation proceedings, does not necessarily act as a bar against fee-shifting. It is conceivable, however, that the provision was intended to prevent all forms of government funding of counsel for aliens in deportation proceedings.

Further evidence of congressional intent to broadly apply the EAJA, cited by Hodge, includes the statement accompanying the Model Rules for the Implementation of the EAJA issued by the Administrative Conference of the United States (ACUS). That statement advises agencies to take "broad interpretation of the reference to adjudications 'under section 554' largely to avoid protracted debate about whether particular proceedings fall within its ambit." It adds that "considering the purposes of the [EAJA], questions of its coverage should turn on substance ... rather than technicalities." *Escobar Ruiz*, 838 F.2d at 1024 (quoting Administrative Conference of the United States, Equal Access to Justice Act: Agency Implementation, 46 Fed.Reg. 32,-900–32,901 (1981)).

Although we find this pronouncement by the ACUS on how to effectuate the EAJA to be less compelling evidence of congressional intent than did the *Escobar Ruiz* court, we do not reject the statement wholesale as did the *Owens* court.[13] In criticizing *Escobar Ruiz's* interpretation of the model rules, the *Owens* court suggested that other language in the ACUS's model rules and commentary in effect adopted the "governed by" interpretation of "under." The rules state that, "[w]here it is clear that certain categories [of proceedings] are *governed by* [section 554], agencies should list the types of proceedings in their rules." 860 F.2d at 1366 (emphasis added). We do not agree with the *Owens* court that the usage of "governed by" in this context should be interpreted as a strict limitation on the application of the EAJA to proceedings that are technically governed by section 554. In our view, the provision at issue merely seeks to identify those types of proceedings that are clearly covered, leaving open the question whether proceedings that are congressionally required to follow the procedures of section 554, but are not technically governed by section 554, fall within the ambit of the EAJA.

Hodge also refers to the House Report for the 1985 reauthorization of the EAJA issued by the Judiciary Committee. That report notes that the courts have been construing the EAJA too narrowly. The examples to which the House Report points, however, do not concern the issue at bar. Rather, the report refers to judicial construction of other terms in the Act, namely "position of the United States" and "substantially justified." These concerns shed no light on the question of how to interpret "adjudications under section 554." *See Escobar Ruiz v. I.N.S.*, 813

---

expressio unius est exclusio alterius."); *see also Quarles v. St. Clair*, 711 F.2d 691, 699 n. 22 (5th Cir.1983).

**12.** 28 C.F.R. § 24.103.

**13.** We also do not agree with the *Owens* court that "the ACUS rules ... eschew a broad interpretation of 504(b)(1)(C)...." The Sixth Circuit based this statement on language in the ACUS rules that "the liberal interpretation of the draft model rules may provide for broader applicability than Congress intended." The ACUS was

apparently concerned with agency proceedings that *voluntarily* use section 554 procedures, and consequently eliminated those proceedings from EAJA coverage. We do not, nor should we, infer from the ACUS's statement that they meant, for the purposes of EAJA coverage, to equate agency proceedings that *voluntarily* use section 554 procedures, with those, like deportation proceedings, that are *mandated* to use section 554 procedures (though the mandate stems not from the APA but from other statutory authority).

F.2d 283, 290 (9th Cir.1987); H.R.Rep. No. 120, 99th Cong., 1st Sess., *reprinted in* 1985 U.S.Code, Cong. & Admin.News 132.

Having carefully considered the text and legislative history of the EAJA, we do not find sufficient evidence of congressional intent to apply the EAJA expansively. Although we agree that the purposes of the EAJA would be furthered by its application to deportation proceedings, we are constrained by general principles of statutory interpretation to hold that it does not apply.

### B. Sovereign Immunity Waivers

Our holding is also necessarily influenced by the Supreme Court's pronouncement that statutes waiving the government's general immunity from attorneys' fee claims must be "construed strictly in favor of the sovereign" and not "enlarge[d] ... beyond what the language requires." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685–86, 103 S.Ct. 3274, 3278, 77 L.Ed.2d 938 (1983) (quoting *McMahon v. United States*, 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951), and *Eastern Transp. Co. v. United States*, 272 U.S. 675, 686, 47 S.Ct. 289, 291, 71 L.Ed. 472 (1927)). Because deportation proceedings are not clearly within the scope of the EAJA, we believe that it is incumbent upon Congress, not this court, to enlarge the statute to include such proceedings if that is the result that Congress intended.

### III. *Conclusion*

For the foregoing reasons, we AFFIRM the decision of the Board of Immigration Appeals and DENY the petition for review.

GOLDBERG, Circuit Judge, dissenting:
Give me your tired, your poor,
Your huddled masses yearning to breathe free,
The wretched refuse of your teeming shore,
Send these, the homeless, tempest-tossed to me:
I lift my lamp beside the golden door.[1]

I cannot help but wonder how many immigrants arriving through New York harbor now wonder if the outstretched arms of the Statue of Liberty are meaningful or meaningless. I respectfully dissent from the majority's holding and would adopt the holding and rationale of *Escobar Ruiz v. I.N.S.*, 838 F.2d 1020 (9th Cir.1988) (*en banc*).

The Equal Access to Justice Act (EAJA) is a statutory mandate of significant value in our jurisprudence. There is no doubt in my mind that the EAJA's legislative history does not clearly indicate whether Congress intended this mandate to extend to immigration proceedings. We must therefore look to Congress' basic purpose in enacting this legislation, which was to provide access to our justice system to those who need it most. I can think of no other group more deserving than the many immigrants to this country. These people often have to appear before the Immigration and Naturalization Service (INS) without funds or friends to assist them in their legal skirmish with our government.

The application of the EAJA to INS proceedings is an important issue and one would expect there to be diverse opinions, but that does not diminish the strength of my conviction that we should reverse the Board of Immigration Appeals decision. I do not foresee a great financial cost for our government if we allow prevailing parties in deportation proceedings to recover their attorneys' fees. Absent a definitive proscription of such award in the statute, I see no reason to dash the hopes and the ambitions of the many people who must appear before the INS in order to remain in this country. Therefore, I respectfully dissent.

1. E. Lazarus, *The New Colossus*, in America Forever Now (1968) (inscribed on the pedestal of the Statue of Liberty).