**Enrique Caciedo ESCOBAR, Petitioner,**

v.

**U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 90–2904.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 9, 1991.

Decided June 4, 1991.

---

A. Frank Johns, Jr., argued, Booth, Harrington, Johns & Campbell, Greensboro, N.C., for petitioner.

Lori Lynn Scialabba, argued, Stuart M. Gerson, Asst. Atty. Gen., David J. Kline, Asst. Director, Civ.Div., U.S. Dept. of Justice, Washington, D.C., for respondent.

Before SPROUSE and WILKINSON, Circuit Judges, and ELLIS, District Judge for the Eastern District of Virginia, sitting by designation.

ELLIS, District Judge:

This appeal presents the question, unresolved in this circuit, whether the prevailing party against the government in a deportation proceeding is entitled to an award of attorney's fees under the Equal Access to Justice Act ("EAJA" or "the Act"), 5 U.S.C. § 504. We join several circuits in concluding that such an award is not authorized. In essence, we conclude that the EAJA allows appeals only from fee determinations in adversary adjudications "under [5 U.S.C.] section 554" of the Administrative Procedure Act ("APA"), and that

deportation proceedings are not adjudications "under" § 554 of the APA. Accordingly, we dismiss this appeal.

### I.

Enrique Escobar–Caicedo is a thirty six year-old native and citizen of Colombia. He entered this country lawfully as an immigrant in September 1965. He has continuously resided here since then.

In the spring of 1973, Escobar was arrested and charged with conspiracy to possess cocaine. At the time, he was under the age of twenty one. In 1974, he pled guilty to the charge and was sentenced to twelve months imprisonment with the execution of all but two (2) months of the sentence suspended. He served the two (2) months and an additional three (3) years of probation. The Immigration and Naturalization Service ("INS") did not detain him at the time of his plea or sentence. Three years later, the conviction was set aside pursuant to then-existing law governing the issuance of certificates setting aside the convictions of youthful offenders. *See* 18 U.S.C. § 5021, *repealed* 98 Pub.L. 473 (1984). The genesis of this matter is, in large measure, attributable to the parties' failure in a timely manner to establish the setting aside of the conviction in the deportation proceeding record.

As noted, the INS took no action against Escobar in 1974, at the time of his plea or sentence. Not until June 1979, after Escobar had sought replacement of his Form I–151, did the INS seek the issuance of a show cause order on the ground that Escobar's 1974 conviction rendered him subject to deportation pursuant to 8 U.S.C. § 1252. The show cause order issued and a hearing was set for December 20, 1979. Escobar, who by then had moved with his family from New York to North Carolina, returned to New York for the hearing. At the hearing, Escobar was found deportable, but the file reflects that he applied for a waiver pursuant to 8 U.S.C. § 1182(c)[1] and that his file was then forwarded within the

---

1. Section 1182(c) confers discretion on the Attorney General under certain circumstances to admit aliens convicted of drug offenses.

INS for review. Nothing happened thereafter for almost five years. Then, in 1984, the INS sent Escobar a new notice of hearing to his old New York address. In 1987, another hearing notice was sent to the stale New York address. Escobar did not receive either of these notices.

In 1989, Escobar was incarcerated in North Carolina for civil contempt. This apparently occurred as a result of a dispute he had with his then estranged wife. While incarcerated in March 1989, Escobar was served with an INS warrant for his detainer and arrest based on the 1979 show cause order, which in turn was based on Escobar's 1974 federal misdemeanor conviction as a juvenile. He was taken into custody by the INS, which set a $25,000 bond for his release. At a hearing later in March, Escobar's counsel stated she was prepared to proceed on the issue of bond redetermination, but not on Escobar's § 1182(c) waiver request. The matter was continued for a full hearing in April. At that hearing, Escobar's counsel withdrew the waiver request, but requested a continuance to seek expungement of Escobar's conviction. The request was granted, but Escobar's counsel failed by the deadline date to submit any evidence that the conviction was subject to expungement or had been expunged. The parties dispute whether a further continuance was requested. In any event, on June 1, 1989, the immigration judge issued a decision stating that Escobar should be deported and denying a bond reduction request. Escobar appealed this decision to the Board of Immigration Appeals ("BIA"), which remanded the bond redetermination order to the immigration judge to make certain required findings. At the subsequent bond redetermination hearing, Escobar's counsel suggested that Escobar's conviction may already have been expunged. Once this fact was verified, the INS requested the BIA to reopen and terminate the deportation proceedings against Escobar. On October 24, 1989, the BIA granted this request.

One month later, Escobar, by counsel, filed a motion for attorney's fees under the EAJA with the Executive Office of Immigration Review. The motion was referred to the immigration judge, who denied it. Escobar's counsel then advised that he intended the fee request to be made to the BIA, which then also denied the request, noting that the Attorney General "has determined that immigration proceedings do not come within the scope of the EAJA."

This appeal followed.

## II.

█ We are presented with a question of statutory interpretation. With such questions, it is axiomatic that the "starting point ... is always 'the language [of the statute] itself.'" *United States v. James*, 478 U.S. 597, 604, 106 S.Ct. 3116, 3120, 92 L.Ed.2d 483 (1986), *quoting Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring). Thus, the starting point in determining whether the EAJA applies to deportation proceedings is section 504(a)(1) of the Act, which provides that "[a]n agency that conducts an *adversary adjudication* shall award, to a prevailing party other than the United States, fees and expenses incurred by that party in connection with that proceeding...." 5 U.S.C. § 504(a)(1) (emphasis added). And according to section 504(b)(1)(C) of the Act, " 'adversary adjudication' means (i) an adjudication *under Section 554* of this title [the Administrative Procedure Act] in which the position of the United States is represented by counsel or otherwise...." (Emhpasis added.) Therefore, whether the EAJA's fee award provision applies to deportation proceedings turns on whether such proceedings are adjudications "under" the APA.[2] We conclude they are not.

The first step in the interpretive effort is to ascertain whether the language in issue has a plain and ordinary meaning, for there is a strong presumption "that the legisla-

---

**2.** There is no dispute that deportation proceedings meet the other aspects of the "adversary adjudication" definition. They are proceedings in which "the position of the United States is represented by counsel or otherwise." 5 U.S.C. § 504(b)(1)(C)(i).

tive purpose is expressed by the ordinary meaning of the [statutory] words used." *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982); *see also INS v. Cardoza–Fonseca,* 480 U.S. 421, 431, 107 S.Ct. 1207, 1213, 94 L.Ed.2d 434 (1987). Indeed, this inquiry may end the interpretive effort, for "when ... the terms of a statute [are] unambiguous, judicial inquiry is complete, except "in 'rare and exceptional circumstances.' " *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981) (citations omitted); *United States v. Lund,* 853 F.2d 242, 245 (4th Cir.1988).

In our view, the phrase "under Section 554 [of the APA]" has a plain and ordinary meaning. It means "governed by" or "subject to" section 554 of the APA. Contrary to Escobar's contention, it does not mean "as defined by" or "related or akin to" the APA. Such a meaning for the phrase would be strained and unusual.[3] Given our conclusion as to the phrase's plain meaning, it follows that INS deportation proceedings do not fall within the EAJA's fee award provision, for it has long been settled that such proceedings are not subject to or governed by the APA. *See Marcello v. Bonds,* 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107 (1955) (deportation proceedings governed solely and exclusively by regulations promulgated under the Immigration and Naturalization Act, although APA served as a model for such regulations); *see also Giambanco v. INS,* 531 F.2d 141, 144 (3d Cir.1976); *Cisternas–Estay v. INS,* 531 F.2d 155, 158–59 (3d Cir.), *cert. denied,* 429 U.S. 853, 97 S.Ct. 145, 50 L.Ed.2d 127 (1976); *Ho Chung Tsao v. INS,* 538 F.2d 667, 669 (5th Cir.1976) (per curiam), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1176, 51 L.Ed.2d 582 (1977). In sum, we conclude that the plain meaning of the EAJA fee award provision compels the con-

clusion that the EAJA does not apply to INS deportation proceedings.

■ In reaching this conclusion, we join the Third, Fifth, Eleventh and D.C. Circuits, each of which has squarely decided this issue. *See Clarke v. INS,* 904 F.2d 172 (3d Cir.1990); *Hodge v. U.S. Department of Justice, INS,* 929 F.2d 153 (5th Cir.1991); *Ardestani v. U.S. Dept. of Justice,* 904 F.2d 1505 (11th Cir.1990), *cert. granted,* —— U.S. ——, 111 S.Ct. 1101, 113 L.Ed.2d 212 (1991); *Full Gospel Portland Church v. Thornburgh,* 927 F.2d 628 (D.C. Cir.1991) (per curiam). As the opinions of Judge Fay for the Eleventh Circuit and Chief Judge Higginbotham for the Third persuasively demonstrate, this conclusion is fully consistent with the pertinent legislative history. *See Ardestani,* 904 F.2d at 1510–13; *Clarke,* 904 F.2d at 175–77; *see also Hodge,* 929 F.2d at 157. Also persuasively demonstrated in these decisions is the propriety of limiting the EAJA phrase "under section 554 of [the APA]" to its plain meaning of "governed by," such limitation being commanded not just by the well-established plain meaning rule, but also by the principle that waivers of sovereign immunity, which is what an expansion of the EAJA fee award provision amounts to,[4] must be strictly construed in favor of the sovereign. *See Ardestani,* 904 F.2d at 1509–10; *Clarke,* 904 F.2d at 176; *Hodge,* 929 F.2d at 158; *see also Library of Congress v. Shaw,* 478 U.S. 310, 318, 106 S.Ct. 2957, 2963, 92 L.Ed.2d 250 (1986); *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983) (waiver of sovereign immunity "must be 'construed strictly in favor of the sovereign' " and not " 'enlarge[d] ... beyond what the language requires.' " (Internal citations omitted.)

Yet another factor supporting our reading of the EAJA fee award provision is that Congress, apparently quite aware of the provision's limited scope, has expanded

---

**3.** Also significant is that everywhere the term "under" appears elsewhere in EAJA, it can have no other meaning but "subject to" or "governed by." *See* 5 U.S.C. § 504(a)(2), (c)(2), (d); *see also St. Louis Fuel & Supply Co. v. FERC,* 890 F.2d 446, 450 (D.C.Cir.1989).

**4.** The EAJA renders the United States liable for attorney's fees which it would otherwise not owe. *See Spencer v. NLRB,* 712 F.2d 539, 544 (D.C.Cir.1983), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984).

the definition of "adversary adjudications" in two instances previously considered to be outside the EAJA's scope. In 1985, Congress overruled *Fidelity Const. Co. v. United States*, 700 F.2d 1379 (Fed.Cir.), *cert. denied*, 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983), by amending § 504(b)(1)(C) to add specific proceedings under the Contract Disputes Act of 1978, 41 U.S.C. § 605. *See* H.R.Rep. No. 120 (part 1), 99th Cong., 1st Sess. 15, *reprinted in* 1985 U.S.Code Cong. & Admin.News 132, 144. Next, in 1986 Congress amended the same EAJA section to add proceedings under the Program Fraud Civil Remedies Act, 31 U.S.C. § 3801, to the list of "adversary adjudications" eligible for EAJA fee awards. While not conclusive on the question at bar, these amendments reflect Congress' awareness that the scope of the EAJA fee award provision is limited to "adversary adjudications," *i.e.*, those "under" or governed by the APA. This history teaches that the question whether INS deportation proceedings are to come within the EAJA fee award provision is one properly committed to Congress.

While we join three circuits in the conclusion we reach today, it is necessary to note, as Escobar correctly points out, that one circuit has reached the contrary conclusion. In *Escobar Ruiz v. INS*, 838 F.2d 1020 (9th Cir.1988) (en banc), the Ninth Circuit held that the EAJA applies to INS deportation proceedings. In reaching this result, the Ninth Circuit concluded that the statutory term "under" was ambiguous and that policy considerations reflected in the legislative history warranted giving the term an expansive reading. Specifically, the Ninth Circuit found that "under" meant "as defined by," which, as it happened, was essentially the same language as that used in a 1980 House Conference report to describe an "adversary adjudication" under the EAJA. We disagree. Instead, we find convincing the extensive criticism of *Escobar Ruiz* found in *Clarke* and *Ardestani* and in *Owens v. Brock*, 860 F.2d 1363 (6th Cir.1988), a Sixth Circuit decision holding that the EAJA fee award provision does not apply to Federal Employee Compensation Act proceedings because such proceed-

ings are not "under" or governed by the APA. In *Owens*, Chief Judge Engel described as "ephemeral" the bit of legislative history on which *Escobar Ruiz* is based. The D.C. Circuit has also criticized *Escobar Ruiz*. In *St. Louis Fuel & Supply Co. v. FERC*, 890 F.2d 446 (D.C.Cir. 1989), the D.C. Circuit held that the EAJA fee award provision does not apply to a proceeding challenging a Department of Energy price regulation remedial order. In reaching this result, the D.C. Circuit panel rejected the *Escobar Ruiz* analysis and result. The D.C. Circuit found no ambiguity in the phrase "under section 554 [of the APA]" and no warrant in the legislative history for an expansive reading of the phrase, especially in light of the rule that doubts about the scope of a waiver of sovereign immunity should be resolved in favor of the government. *See* 890 F.2d at 449–51.

*Escobar Ruiz* rests, it seems, on the expressed concern about difficulties unrepresented aliens face in INS deportation proceedings. We are not unsympathetic to these concerns, but they cannot legitimately serve to justify stretching statutory language beyond its plain meaning. Congress drew a "bright line" between those proceedings in which fees may be awarded under the EAJA and those not so covered. *See St. Louis Fuel & Supply Co.*, 890 F.2d at 451. INS deportation proceedings fall on the non-EAJA side of this bright line. Only Congress, if it chooses, can change this.

Accordingly, we affirm the BIA's conclusion that the EAJA fee award provision has no application to INS deportation proceedings.

DISMISSED.