**PREMIER TRUST, INC., Plaintiff,**

v.

**Suzanne DUVALL; Lionel Sawyer & Collins; Internal Revenue Service; and United States of America, Defendants.**

**And Related Cross Claims.**

**No. 2:07–CV–01187–PMP–PAL.**

United States District Court,
D. Nevada.

March 31, 2008.

Randolph L. Howard, Joseph G. Went, Kolesar & Leatham, Chtd., Las Vegas, NV, for Plaintiff.

Doreen Spears Hartwell, Lionel, Sawyer & Collins, Las Vegas, NV, for Defendants.

## ORDER

PHILIP M. PRO, District Judge.

Presently before the Court is Defendant United States' Motion for Summary Judgment (Doc. # 33) with supporting exhibits (Doc. # 37), filed on December 14, 2007.

Defendant Lionel Sawyer & Collins filed an Opposition (Doc. # 39) on January 2, 2008. Defendant United States filed a Reply (Doc. # 42) on January 16, 2008.

Also before the Court is Defendant Lionel Sawyer & Collins' Motion for Summary Judgment (Doc. # 36), filed on December 14, 2007. Defendant United States filed an Opposition (Doc. # 41) on January 2, 2008. Defendant Lionel Sawyer & Collins filed a Reply (Doc. # 43) on January 16, 2008.

Also before the Court is Plaintiff Premier Trust, Inc.'s Motion to Discharge Plaintiff Stakeholder from Liability and Awarding Attorneys' Fees and Costs to Plaintiff (Doc. # 34) with a supporting declaration (Doc. # 35), filed on December 14, 2007. Defendant Lionel Sawyer & Collins filed a Notice of Non–Opposition (Doc. # 38) on January 2, 2008. Defendant United States filed a Response (Doc. # 40) on January 2, 2008.

## I. BACKGROUND

Plaintiff Premier Trust, Inc. ("Premier") filed a Complaint for Interpleader in this Court on August 31, 2007. (Compl.[Doc.# 1].) Premier seeks adjudication of the ownership of funds Defendant Suzanne Duvall ("Duvall"), a Maryland resident, placed in trust with Premier. Defendant Lionel Sawyer & Collins ("LSC"), a Nevada professional corporation, and Defendant United States both claim an interest in the funds. Pursuant to the relevant agency agreement with Premier, Duvall reserved the right to control disposition of the funds. Premier brought this action to resolve these conflicting claims to the subject funds. Defendants LSC and the United States move for summary judgment, and Premier moves to be released from the action and for costs and attorney's fees.

On November 12, 2004, LSC filed suit in Nevada state court against Duvall seeking payment of attorney's fees Duvall agreed to pay for services LSC performed. (Lionel Sawyer & Collins' Answer & Cross–Claim [Doc. # 19], Ex. A.) Specifically, LSC alleged Duvall agreed to pay her brother's costs and attorney's fees incurred in defending claims brought against her brother for actions he took in connection with the burial of their father. (*Id.*) That same day, the Nevada state district court entered an Order Granting Writ of Attachment in the amount of $58,737.42 plus interest on Duvall's beneficial interest in two trusts. (*Id.,* Ex. B.) The Nevada state court concluded a writ of attachment was appropriate because Duvall's interest in the trusts constituted her only property in the state and the property was about to be removed from the state. (*Id.*)

On January 4, 2005, Duvall and LSC entered into a Stipulation and Order in which the parties agreed Premier would disburse $70,000 from Duvall's share of the trusts and hold the funds in an interest bearing escrow account under Premier's control. (*Id.,* Ex. C.) The parties agreed Premier would hold the funds "as security for any potential recovery by the Plaintiffs in this case, until further Order of the Court or agreement of the parties." (*Id.*) Premier was not a party to the Stipulation and Order. (*Id.*) On May 20, 2005, Duvall and Premier entered into an agency agreement under which Duvall retained the right to control disposition of property she placed in trust with Premier.[1] (Compl., Ex. 1.)

The United States filed a tax lien in Maryland on September 6, 2006, in the amount of $89,593.83, arising from tax assessments for the years 1995 to 2001 for taxpayers Duvall and Robert Ash. (Exs. A1 Through D4 to Mot. for Summ. J. [Doc. # 37, "Exs."], Ex. A1.) On October 11, 2006, Premier received a Notice of Levy from the United States in the amount of $135,785.28 based on the tax assessments and the related tax lien. (Exs., Ex. B2.) On November 6, 2006, Premier provided the United States with approximately $20,000 of the funds it was holding in trust for Duvall. (Exs., Ex. C3.) However, Premier advised the United States it was holding the rest of Duvall's funds under the Order Granting Writ of Attachment pending resolution of the dispute between Duvall and LSC. (*Id.*) Specifically, Premier stated it was "acting as Agent under a dispute between Ms. Duvall and the attorneys handling her father's estate and trust. [Premier has] a judicial attachment from the Court with an Order Granting Writ of Attachment instructing [Premier] to hold a specific amount until the attachment has been released." (*Id.*)

The United States filed a Notice of Federal Tax Lien with the Clark County Recorder in Las Vegas, Nevada on May 9, 2007. (Exs., Ex. D4.) On July 24, 2007, final judgment was entered in favor of LSC and against Duvall in the amount of $37,500. (Lionel Sawyer & Collins' Answer & Cross–Claim, Ex. D.) On August 3, 2007, Premier received a Notice of Levy from the United States in the amount of $123,157.28. (Compl., Ex. 2.) On August 9, 2007, Premier received a Writ of Execution in the amount of $37,769.15 based on the judgment LSC obtained against Duvall in the state court action. (*Id.,* Ex. 3.) Premier thereafter brought this interpleader action and deposited the interpled funds with the Court. (Compl.; Notice of Deposit of Interpleader Funds [Doc. # 31];

---

**1.** The agency agreement relates to personal property Duvall deposited with Premier as reflected in "Schedule A" attached to the agency agreement. No party has provided Schedule A.

Notice of Deposit of Additional Interpleader Funds [Doc. # 44].)

The United States asserts its federal tax lien on the funds has priority over LSC's claim based on the writ of attachment and state court judgment. LSC contends it obtained a security interest in the funds through the Stipulation and Order before the United States filed notice of the tax lien, and therefore LSC's claim takes priority over the United States' interest.[2]

Additionally, Premier moves to be released from the action and requests costs and attorney's fees. Premier acknowledges that if the United States has priority, Premier is not entitled to costs and fees out of the interpled funds. Defendant LSC does not oppose Premier's motion. The United States contends that if it has priority, Premier is not entitled to costs, and if LSC has priority, Premier's costs and fees may be recovered only out of LSC's portion of the interpled funds.

## II. MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" demonstrate "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The substantive law defines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All justifiable inferences must be viewed in the light most favorable to the non-moving party. *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir.2001).

The party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir.2000). The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue for trial. *Id.; Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

In an interpleader action, the party holding the money or property "sues all those who might have claim to the money, deposits the money with the district court, and lets the claimants litigate who is entitled to the money." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1265 (9th Cir. 1992); 28 U.S.C. § 1335. The purposes of an interpleader action are to resolve competing rights and claims to the property and to protect the party holding the property from multiple liability and the expense of multiple suits. *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1034 (9th Cir.2000); *Texaco, Inc. v. Ponsoldt*, 118 F.3d 1367, 1370 (9th Cir.1997).

Plaintiff Premier has deposited with the Court the interpled funds in an amount greater than $500 and has identified parties of diverse citizenship who claim entitlement to the funds. This Court therefore has jurisdiction over this matter.

### A. Priority of Claims

 "Federal law governs the relative priority of federal tax liens." *Feiler v. United States*, 62 F.3d 315, 317 (9th Cir. 1995). Where Congress has not expressed specifically its intention regarding the priority of certain interests, the relative priority of a federal tax lien as against a lien created under state law is "governed by the common-law rule-'the first in time is

---

**2.** Duvall has not responded to either motion. Satisfaction of the United States and LSC's claims to the funds will exhaust the funds with no remainder for Duvall.

the first in right.'" *United States v. Pioneer Am. Ins. Co.*, 374 U.S. 84, 87, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963) (quoting *United States v. New Britain*, 347 U.S. 81, 85, 74 S.Ct. 367, 98 L.Ed. 520 (1954)). The priority of a lien created under state law "depends on the time it attached to the property in question and became choate." *Id.* at 88. A choate state law lien takes priority over a later-assessed federal tax lien, but an inchoate state law lien does not. *Id.* Whether a lien created under state law is sufficiently choate to take priority over a federal tax lien is a question of federal law. *Id.; United States v. Sec. Trust & Sav. Bank of San Diego*, 340 U.S. 47, 49–50, 71 S.Ct. 111, 95 L.Ed. 53 (1950) ("[A]lthough a state court's classification of a lien as specific and perfected is entitled to weight, it is subject to reexamination by this Court.").

■ A lien created under state law is choate when "the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *Pioneer Am. Ins. Co.*, 374 U.S. at 89, 83 S.Ct. 1651 (quotation omitted). A state attachment lien is not sufficiently choate to take priority over a federal tax lien where the property subject to the liens was attached prior to the time the United States filed notice, but final judgment on the attachment lien was not entered until after the United States filed notice. *See United States v. Acri*, 348 U.S. 211, 213–14, 75 S.Ct. 239, 99 L.Ed. 264 (1955); *Sec. Trust & Sav. Bank of San Diego*, 340 U.S. at 49–50, 71 S.Ct. 111; *United States v. Dishman Indep. Oil, Inc.*, 46 F.3d 523, 527 (6th Cir.1995). This is so because the amount of the state law lien is not established until final judgment is entered, and consequently it is not sufficiently choate to take priority over the federal tax lien. *See Acri*, 348 U.S. at 213–14, 75 S.Ct. 239 ("We hold here that the attachment lien in Ohio is for

federal tax purposes an inchoate lien because, at the time the attachment issued, the fact and the amount of the lien were contingent upon the outcome of the suit for damages.").

■ A lien in favor of the United States attaches to all property and rights to property belonging to a person liable to pay taxes who neglects or refuses to pay the taxes after the United States has demanded payment. 26 U.S.C. § 6321. This lien arises at the time the United States makes the assessment. *Id.* § 6322. Congress has set forth the relative priority of a § 6321 federal tax lien in some specified circumstances. *See id.* § 6323. Relevant here is the provision that a § 6321 tax lien is not valid as against "any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor" until the United States properly has filed notice of the lien. 26 U.S.C. § 6323(a). A "security interest" means:

> any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

*Id.* § 6323(h)(1). A security interest is protected under local law against a subsequent judgment lien arising out of an unsecured obligation when it has been perfected under the relevant state law. *Manalis Fin. Co. v. United States*, 611 F.2d 1270, 1273–74 (9th Cir.1980); *see also Walker Bank & Trust Co. v. Smith*, 88 Nev. 502, 501 P.2d 639, 642 (1972) (stating a perfected security interest "enjoys a preferred position" with respect to a lien creditor).

Under Nevada law, "a secured party may perfect a security interest in tangible negotiable documents, goods, instruments, money or tangible chattel paper by taking possession of the collateral." Nev.Rev. Stat. § 104.9313(1). When the collateral is in the possession of a person other than the debtor or the secured party, the secured party takes possession of the collateral when either (a) the person in possession authenticates a record acknowledging that it possesses the collateral for the secured party's benefit; or (b) the person takes possession of the collateral after having authenticated a record acknowledging that it will possess the collateral for the secured party's benefit. *Id.* § 104.9313(3).

Nevada does not define "possession" with respect to this provision, but the Uniform Commercial Code Comment to § 104.9313 directs that agency principles apply. *See id.* cmt. 3. If the secured party's agent possesses the collateral on behalf of the secured party, and if the agent is not also the debtor's agent, the secured party has perfected its security interest through actual possession. *Id.* Where a person holds collateral both as an agent of the secured party and as an agent of the debtor, dual agency may suffice to constitute possession by the secured party. *Id.* However, the debtor cannot be the secured party's agent, nor can "a person in possession [who] is so closely connected to or controlled by the debtor [such] that the debtor has retained effective possession, even though the person may have agreed to take possession on behalf of the secured party." *Id.* "In a typical escrow arrangement, where the escrowee has possession of collateral as agent for both the secured party and the debtor, the debtor's relationship to the escrowee is not such as to constitute retention of possession by the debtor." *Id.*

LSC contends it is a holder of a security interest as defined under § 6323(h)(1) because the Stipulation and Order represented an agreement between the parties for the purpose of securing payment of Duvall's obligation to pay attorney's fees. LSC argues the Stipulation and Order placed the funds into escrow, Nevada law protected those funds against a subsequent judgment lien arising out of an unsecured obligation, and LSC parted with money or money's worth by agreeing to vacate the writ of attachment. LSC contends it perfected its security interest under Nevada law before the United States filed notice because Premier, acting as LSC's escrow agent, possessed the funds.

Viewing the facts in the light most favorable to the United States on LSC's motion for summary judgment, a genuine issue of material fact remains regarding whether LSC perfected a security interest in the escrow account. LSC presents no direct evidence Premier acted as LSC's agent. The Stipulation and Order states that Premier was to hold the funds in an escrow account and refrain from disbursing funds from the account absent the parties' agreement or court order. However, Premier was not a party to the Stipulation and Order. According to the only agency agreement presented to the Court, Premier acted solely as Duvall's agent. (Compl., Ex. 1 [identifying Duvall as the principal, indicating any property deposited under the agreement is the principal's separate property, and reserving to the principal the right to direct the agent's disposition of the property].) The agency agreement does not mention LSC and does not refer to the Stipulation and Order. Further, Premier's letter to the United States referred to Premier as an "Agent" but did not specify for whom Premier was acting as agent in the dispute between Duvall and LSC. Premier did not indicate

it was acting as an escrow agent on both parties' behalf. Premier's letter stated it was holding the funds as agent pursuant to the Order Granting Writ of Attachment, not the Stipulation and Order.

In sum, the evidence before the Court raises a genuine issue of material fact as to whether Premier was LSC's agent or acknowledged it possessed the funds or took possession of the funds for LSC's benefit. A genuine issue of fact therefore remains regarding whether LSC perfected a security interest through possession before the United States filed notice of the tax lien. The Court therefore will deny LSC's motion for summary judgment.

■ Viewing the facts and the reasonable inferences therefrom in the light most favorable to LSC on the United States' motion for summary judgment, a genuine issue of material fact remains regarding whether LSC perfected a security interest in the escrow account through possession. The Stipulation and Order designates Premier as an escrow agent who could not disburse the funds absent the parties' agreement or court order. Premier acknowledged in its letter that it was acting as "Agent" in the dispute between Duvall and LSC. Although LSC provides no direct evidence Premier acted as LSC's agent, the Stipulation and Order and the letter inferentially suggest Premier acted as an escrow agent on behalf of both parties.

However, LSC is not a holder of a security interest as a matter of federal law. The Stipulation and Order set aside funds for LSC's "potential" recovery in the state court action. Consequently, at the time the parties entered the Stipulation and Order, the fact and extent of Duvall's alleged obligation was in dispute and not yet established. LSC has presented no authority that it may obtain a security interest and perfect it through possession based on an agreement to set aside funds pending the outcome of litigation where, at the time the parties entered into the purported security agreement, the alleged debtor disputes it owes any obligation whatsoever. The Stipulation and Order sought security for a potential obligation and in the event of liability, and as such is an inchoate lien akin to the writ of attachment the Stipulation and Order replaced. Because the fact and amount of Duvall's obligation to LSC were not established until final judgment, and LSC did not obtain final judgment until after the United States filed notice, LSC's interest is inchoate and therefore subordinate to the federal tax lien. *See Acri,* 348 U.S. at 213–14, 75 S.Ct. 239; *Sec. Trust & Sav. Bank of San Diego,* 340 U.S. at 49–50, 71 S.Ct. 111; *Dishman,* 46 F.3d at 527.

■ Finally, LSC does not have priority over the United States' tax lien pursuant to § 6323(c). To have priority under this section, the security interest at issue must arise under a commercial transactions financing agreement, a real property construction or improvement financing agreement, or an obligatory disbursement agreement. Both a commercial transactions financing agreement and an obligatory disbursement agreement must be agreements "entered into by a person in the course of his trade or business." 26 U.S.C. § 6323(c)(2)(A) & (c)(4)(A). Duvall entered into the Stipulation and Order in the context of defending an action for attorney's fees and costs which arose due to Duvall's alleged agreement to pay her brother's attorney's fees arising out of a suit against her brother for his actions in settling their father's estate. It is not even arguable these are matters in the course of Duvall's trade or business. A real property construction or improvement financing agreement is an agreement to make cash disbursements to finance con-

struction or improvements of real property or the raising of harvesting crops or livestock. *Id.* § 6323(c)(3)(A). The Stipulation and Order has no relation to real property. LSC therefore cannot prevail under § 6323(c).

The Court will grant summary judgment in favor of the United States and against LSC. The United States is entitled to the entire amount of the funds on deposit with the Court in this action. (Notice of Deposit of Interpleader Funds [Doc. # 31]; Notice of Deposit of Additional Interpleader Funds [Doc. # 44].)

### B. Premier's Motion for Costs and Fees

 In an interpleader action, the Court may discharge the disinterested plaintiff from further liability in relation to the interpled property or funds. 28 U.S.C. § 2361. Generally, the Court has discretionary authority to award attorney's fees to the disinterested stakeholder. *Abex Corp. v. Ski's Enter., Inc.*, 748 F.2d 513, 516 (9th Cir.1984). However, where the United States has a prior existing federal tax lien, the government's lien has "statutory priority over the interpleader plaintiff's ability to diminish the fund by an award of fees" until the tax lien is completely satisfied or becomes unenforceable. *Id.* at 516–17, 748 F.2d 513.

Because the United States has a prior tax lien that the interpled funds will not completely satisfy, the Court will deny Premier's request for fees and costs. However, the Court will grant Premier's request to be discharged from further liability in relation to the interpled funds.

### III. CONCLUSION

IT IS THEREFORE ORDERED that Defendant United States' Motion for Summary Judgment (Doc. # 33) is hereby GRANTED.

IT IS FURTHER ORDERED that Defendant Lionel Sawyer & Collins' Motion for Summary Judgment (Doc. # 36) is hereby DENIED.

IT IS FURTHER ORDERED that Judgment is hereby entered in favor of Defendant United States and against all other claimants for the full amount of the interpled funds deposited in the Court's registry in this case.

IT IS FURTHER ORDERED that Plaintiff Premier Trust, Inc.'s Motion to Discharge Plaintiff Stakeholder from Liability and Awarding Attorneys' Fees and Costs to Plaintiff (Doc. # 34) is hereby GRANTED in part and DENIED in part. The motion is granted in that the Court hereby discharges Plaintiff Premier Trust, Inc. from further liability under 28 U.S.C. § 2361 with respect to the interpled funds. The motion is denied as to Premier Trust, Inc.'s request for fees and costs.